GIRARD TRUST COMPANY, a corporation of the State of
Pennsylvania, Trustee Under Item Ninth of the Last
Will and Testament of MARTIN W. BARR, Deceased,

*vs.*

THE RECTOR, WARDENS and VESTRYMEN OF ST. ANNE'S
PROTESTANT EPISCOPAL CHURCH, a Religious corpora-
tion of the State of Delaware, CATHERINE JUSTIS BALL,
CEDRIC DAY JUSTIS, ROBERT CLAY JUSTIS, CHARLES
JUSTIS, HARRY D. JUSTIS, ROBERT W. JUSTIS, FRANK
JUSTIS, ALBERT YOUNG JUSTIS, HELEN DE HAVEN,
LOUIS DE HAVEN, EDNA CATLIN HUGHES, EDITH DUN-
CAN BOYCE, HERMAN DUNCAN, ROBERT NEWLIN, RICH-
ARD H. CATLIN, BENJAMIN GIBBS, SEWELL GIBBS,
ROBERT YOUNG JUSTIS, and EMILY JUSTIS ALLEN, CORA
L. WILLIS, RALPH P. WILLIS, ROBINSON F. WILLIS,
FRANCES D. WILLIS, FRANK DELAPLAINE TURNER,
THOMAS RUSSELL TURNER, CLIFFORD M. STELLE, SARAH
K. STELLE, BENJAMIN H. STELLE, MARY L. STELLE, MAR-
GARET HILDRETH BUTERBAUGH, HOWARD H. HILDRETH,
JOHN H. HOLT, CARRIE W. FLEMING, DAVIS A. GRUBB,
LOUIS D. GRUBB, JR., MARY G. WATERHOUSE, ELIZABETH
SNECKNER, JACOB WILSON GRUBB.

*New Castle, April 24, 1947.*

2

*J. Frank Biggs* and *Carroll R. Wetzel,* of firm of Barnes,

Dechert, Price, Smith & Clark, of Philadelphia, Pa., for complainant.

*Hugh M. Morris* and *S. Samuel Arsht,* of the firm of Morris, Steel, Nichols & Arsht, for The Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church, defendant.

*William Marvel,* of the firm of Marvel & Morford, for Catherine Justis Ball, Helen De Haven, Jacob Wilson Grubb, Robert Newlin, and Mary G. Waterhouse, defendants.

*Reuben Satterthwaite, Jr.,* and *William S. Satterthwaite,* of the firm of Satterthwaite & Satterthwaite, for Richard H. Catlin, defendant.

*W. Thomas Knowles,* of the firm of Knowles & Allmond, for Cedric Day Justis, Robert Clay Justis, Thomas Russell Turner, and Frank Delaplaine Turner, defendants.

*Harry W. Lunger,* for Sarah K. Stelle, defendant.

*Joseph A. L. Errigo,* for Charles Justis and Harry D. Justis, defendants.

*Harry. K. Hoch,* for John H. Holt, defendant.

SEITZ, Vice-Chancellor: The court is required to determine the validity and scope of what purports to be a testamentary trust.

Girard Trust Company, a Pennsylvania corporation having its place of business in Philadelphia, Pennsylvania, was designated as trustee under the Ninth Item of the will of Dr. Martin W. Barr, who died December 25, 1938, a resident of Middletown, Delaware. Girard Trust Company as trustee under the Ninth Item (hereinafter called the "trustee") filed a bill for instructions which, with its amendment, joined as defendants The Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church (hereinafter called the "Church") and thirty-eight individuals who con-

stituted all the known next of kin of the testator. Answers were filed by the Church and by sixteen of the individual defendants ("defendants" as used herein will refer only to the individuals, other than Sarah K. Stelle, who have appeared by counsel). Thereafter, a final hearing was held on the pleadings and testimony of witnesses.

The problem of construction is presented by the following Items of the testator's will:

"Seventh: I give and bequeath unto Girard Trust Company, a corporation of the City of Philadelphia, State of Pennsylvania, and unto its successors and assigns, a sum sufficient when invested to produce an annual net income of Fifteen Hundred Dollars ($1500), IN TRUST, NEVERTHELESS, to invest, reinvest and keep the same invested and to pay over the net income therefrom from the date of my death periodically, but not less frequently than quarterly, unto Dr. A. W. Wilmarth, for and during the term of his natural life, and, upon the death of the said Dr. A. W. Wilmarth to pay over and distribute such net income unto his wife, the present Mrs. A. W. Wilmarth, for and during the term of her natural life, and upon the death of the survivor of said Dr. A. W. Wilmarth and Mrs. A. W. Wilmarth the corpus or principal held hereunder shall fall into and become a part of my residuary estate, to be disposed of as hereinafter directed.

"Eighth: I give and bequeath unto said Girard Trust Company and unto its successors and assigns, a sum sufficient when invested to produce an annual net income of Five Hundred Dollars ($500), IN TRUST NEVERTHELESS, to invest, reinvest and keep the same invested and to pay over the net income therefrom from the date of my death periodically, but not less frequently than quarterly, unto Arnold H. Benchley, now of Burley, Washington, for and during the term of his natural life, and upon the death of the said Arnold H. Benchley the corpus or principal held hereunder shall fall into and become a part of my residuary estate, to be disposed of as hereinafter directed.

"Ninth: All the rest, residue and remainder of my estate of whatsoever kind, whether real, personal or mixed and wheresoever situate and whether now owned or hereafter acquired by me, I give, devise, bequeath, limit, and appoint unto said Girard Trust Company, and unto its successors and assigns, IN TRUST, NEVERTHELESS, to hold, manage, rent, invest, reinvest and keep the same invested in such investments as trustee in its wise discretion shall deem prop-

er, not limiting trustee to what are known as legal investments, and to accumulate the income therefrom until, in the opinion of trustee, a sufficient amount has been accumulated, both as to principal and income, to build a small Chapel of Ease and a Parish House in connection with St. Anne's Protestant Episcopal Church at Middletown, Delaware, whereupon the corpus or principal of my said residuary estate, together with the accumulations thereon, shall be paid over for the erection of such Chapel and Parish House, such erection to be under the supervision of the Rector of said Church and to be a memorial to my father, Joseph M. Barr, my mother, Hannah M. Barr, my brother, Eugene J. Barr, and my aunt, Susan G. Justis, and I direct that a bronze tablet bearing a suitable inscription be erected in an appropriate place in such buildings."

The trustee has asked for instructions with respect to the following matters:

"(a)  Whether complainant as such Trustee may pay over to any one any amount of the accumulated principal and income of the residuary estate prior to the termination of the Item Eighth trust, the principal of which is to fall upon and become a part of the residuary estate trust upon the death of Arnold H. Benchley.

"(b)  If the accumulated principal and income now held by complainant as Trustee under Item Ninth of said Will may now be paid over to any one by said Trustee, whether the whole thereof is to be paid over to or for the Church, or whether only such amount thereof as is sufficient for the mere construction of the memorial, provided for in said Item Ninth, is to be so paid over to the Church and the remainder is to be paid over to the next of kin of the Testator under the intestate laws of the State of Delaware.

"(c)  If the whole or any part of the accumulated principal and income of the residuary estate trust under Item Ninth of said Will may now be paid over, and if the whole thereof is to be paid over to more than one person, to what person or persons is such accumulated principal and income to be paid over by complainant, and what amount is to be paid to each.

"(d)  If the whole or any part of the accumulated principal and income of the residuary estate trust under Item Ninth of said Will may now be paid over to the Church, whether complainant is charged with the duty of seeing to the application by the Church of the funds so paid over to it by the Trustee.

"(e)  If the presently accumulated principal and income of the residuary estate trust may now be paid over by complainant, to what

person or persons and in what amount or amounts are the funds that will come into the hands of complainant on the termination of the trust under Item Eighth of said Will to be paid over by complainant."

The Church claims in its answer that the trustee should now pay to it the whole of the residuary estate trust funds, as presently constituted, and that, upon the termination of the Item Eighth trust, the trustee should pay to the Church the whole of the Item Eighth trust fund, as then constituted, principal and accumulated income, if any.

The answer of Sarah K. Stelle states that she believes it was the testator's intention that the trustee should pay the whole of the residuary estate to the Church.

The contentions contained in the answers of the other individual defendants who have appeared fall into two classes:

(1)  The bequest by way of a trust for the Church is void in its entirety and, therefore, the entire residuary estate should be paid over by the trustee to the testator's next of kin as intestate property.

(2)  It is the trustee's duty to pay to the Church only so much of the testator's residuary estate as is necessary for the mere construction of a small Chapel of Ease and Parish House and to pay the residue of the residuary estate, if any, to the next of kin as intestate property.

It thus appears that with one exception the claims advanced by the individual defendants are adverse in varying degrees to that of the Church.  Since all the next of kin must here stand or fall together, no attempt will be made to identify the particular individual defendants who have urged the various points discussed.

The testator, who died December 25, 1938, was never married.  Both of his parents had predeceased him.  He had no sisters and only one brother who predeceased him without leaving issue. Apparently the only relatives he knew

(though there were others) were those named in his will, and they are not closely related in that they are related to the testator through a great-grandfather who died about 1801, or through another great-grandfather who died about 1832.

The testator's will is dated November 10, 1934. There are three codicils dated, respectively, November 14, 1934, December 9, 1935, and March 16, 1936. The substance of the codicils has no relevancy to the problems here presented. Letters testamentary on Dr. Barr's estate were granted to the Girard Trust Company, and that Company passed its final account here on February 5, 1940.

The assets of Dr. Barr which came into the hands of the executor amounted to $211,920.09. After paying the various costs and expenses of administration, as well as the legacies, except those provided for in Items Seventh, Eighth and Ninth of the will, there remained in the hands of the executor the sum of $160,041.14. From this sum the Girard Trust Company on May 1, 1939, paid to itself as trustee under Item Seventh of the will the sum of $60,000, and it also paid to itself the sum of $20,000, as trustee under Item Eighth of the will. The executor paid to itself as trustee under Item Ninth of the will the balance amounting to $80,041.14.

Dr. A. W. Wilmarth, one of the beneficiaries named in Item Seventh of the will predeceased the testator. The other beneficiary named in Item Seventh, Mrs. Wilmarth, survived the testator, but died on December 17, 1941. Upon Mrs. Wilmarth's death, the corpus of the Item Seventh trust amounting to $57,070.43 was paid over to Girard Trust Company as trustee under Item Ninth of the will.

Arnold H. Benchley, the beneficiary named in Item Eighth of the will, is still living and is about sixty-five years of age. As of December 31, 1945, the market value of the Item Eighth trust amounted to approximately $22,500,

while the market value of the Item Ninth trust amounted to approximately $175,000. As of November 15, 1946, the market value of the Item Eighth trust amounted to approximately $23,000, while the market value of the Item Ninth trust amounted to approximately $181,000. Whenever the income from the Items Seventh and Eighth trusts exceeded the stipulated amount to be received by the particular beneficiary, the excess was paid to the trustee under the Ninth Item of the will. The trustee has filed its accounts in this court.

In December, 1945, the trustee was of the opinion that a sufficient amount had then accumulated, both as to principal and income, to build a small Chapel of Ease and Parish House in connection with St. Anne's Protestant Episcopal Church at Middletown, Delaware. Having so concluded, the trustee then felt that it was required to take the action called for by Item Ninth of the will, namely, pay over the corpus or principal for the purposes designated. However, when the trustee came to pay over the principal, it entertained substantial doubts as to its duties. An examination of the language of the will and Item Ninth in particular demonstrates that there was ample justification for the trustee's feeling of uncertainty.

It is desirable to first dispose of certain preliminary problems. The defendants suggest that "the beneficiary of this fund is so uncertain that the trust is wholly void." They point out that the Ninth Item does not in so many words direct the trustee to pay the money over to any one in particular. While much is left to be desired by way of explicitness in expressing intent, nevertheless, it is the opinion of the court that, under a fair reading of the testator's language, he intended the Church corporation to be the beneficiary of the gift, and not the Rector or some other individual or group. "Pay over" is construed to mean pay over to the Church.

The defendants also contend that we are here dealing

with a private trust which violates the rules against perpetuities and accumulations. However, the clear purpose of this trust is to advance the cause of religion—a long and well-recognized charitable purpose in this state. See *New Castle Common v. Megginson,* 1 *Boyce* 361, 77 *A.* 565, *Ann. Cas.* 1914A. 1207; *Delaware Land & Development Co. v. First and Central Presbyterian Church,* 16 *Del.Ch.* 410, 147 *A.* 165; *Doughten v. Vandever,* 5 *Del.Ch.* 51; *Hutton, Ex'r., v. St. Paul Brotherhood,* 20 *Del.Ch.* 413, 178 *A.* 584. Consequently, we are not here dealing with a private trust, but with a charitable trust which calls for the application of different principles to test its legality. Nor does the purpose or motive of the testator in creating such a trust alter this conclusion. See 2 *Restatement of the Law of Trusts,* § 368d.

Proceeding on the premise that this is a charitable rather than a private trust, let us now consider whether such a trust violates either the rule against perpetuities (more properly described as the rule against remoteness of vesting) or the rule against accumulations. Generally speaking, a charitable trust is not within the operation of the rule against perpetuities. *State v. Griffith,* 2 *Del.Ch.* 392, 421, affirming *State v. Griffith,* 2 *Del.Ch.* 392; *Delaware Land & Development Co. v. First and Central Presbyterian Church, supra; Hutton, Ex'r v. St. Paul Brotherhood, supra; Sussex Trust Co. v. Beebe Hospital of Sussex County, Inc.,* 25 *Del. Ch.* 172, 15 *A.2d* 246; *In re Hunter's Estate,* 279 *Pa.* 349, 123 *A.* 865. However, the defendants argue that the interest given the Church is contingent rather than vested in that it is subject to certain conditions precedent. Consequently, they say that even though it is a charitable trust, it is subject to the rule against perpetuities. See 10 *Am.Jur., Charities,* § 19. Conceding such to be the law, is the interest here given contingent?

The alleged conditions consist of (1) the provision for the accumulation of income, (2) the provision for the exercise of an opinion by the trustee, and (3) the provision that

the erection is to be under the supervision of the Rector. Let us consider these provisions.

Nothing in the language of the will providing for the accumulation of income suggests that such accumulation is to be a condition precedent to the vesting of the Church's interest. Even if it should be said that there is some doubt, this doubt is to be resolved in favor of a conclusion which will result in the early vesting of the estate. *Carpenter v. Carpenter*, 28 *Del. Ch.* 386, 44 *A.* 2d 17. Moreover, as Professor Gray states in his work on *The Rule Against Perpetuities*, (*Fourth Ed.*) § 673:

"The tendency of the courts being to construe limitations as vested, the arrival of the period fixed for, or needed for, the accumulation will not be deemed a condition precedent to the gift of the accumulated fund, unless the language employed requires such a construction."

The quoted language accurately reflects the position taken by nearly all the courts of the United States which have dealt with this subject. See e. g., *Collins v. Lyon*, 181 *Va.* 230, 24 *S.E.2d* 572; *Frazier v. Merchants National Bank of Salem*, 296 *Mass.* 298, 5 *N.E.2d* 550. The provision for accumulation of income does not here create a condition precedent to the vesting of the estate.

The second suggested condition based on the trustee's right to exercise his opinion with respect to the sufficiency of the accumulation is clearly not a condition precedent to the vesting of the fund. The solicitors for the Church quite properly point out that the trustee's right to determine when a sufficient amount has accumulated to build relates only to the time when the Church shall actually enjoy the fund. Nothing in the language employed by the testator or in the general plan of disposition warrants this court in turning this exercise of discretion by the trustee into a condition precedent to the very vesting of the estate itself.

The final alleged condition is based on the power of supervision given the Rector. Once again, the language used

by the testator does not remotely indicate that the exercise of this function by the Rector was intended to be indispensable to the receipt of any benefit by the Church. The provision for supervision by the Rector is not a condition precedent.

While it is clear to me that none of the alleged conditions is in fact a condition precedent to the vesting of this estate, nevertheless, if a doubt did exist the court, under the present circumstances, would be inclined to adopt the approach suggested in 2 *Page on Wills, (Lifetime Ed.)* § 925:

"* * * If one construction of the will will cause it to violate the rules against perpetuities, restraints on alienation, or against accumulation of income, and another construction will make it comply with these rules, the construction which makes it comply with these rules will be preferred."

I conclude that the interest given the Church was vested, and is, therefore, not subject to the rule against perpetuities. 3 *Scott on Trusts,* § 401.9; *Gray, The Rule Against Perpetuities, (Fourth Ed.)* § 205.

However, the validity of provisions for accumulation of income in charitable trust cases seem to have been tested in most cases by the reasonableness of the period of time during which the income is to be accumulated, rather than by the rule against perpetuities. 3 *Scott on Trusts,* § 401.9; 2 *Bogert, Trusts and Trustees,* § 353. Assuming this to be the law in Delaware, under the facts of this case, I cannot now say that the provision for accumulation is unreasonable in operation. In Pennsylvania, a statute prohibiting accumulations specifically excepts from its operation provisions for accumulation of income for religious purposes. See 2 *Bogert, Trusts and Trustees,* § 353. Nothing in the provisions of the present trust would take it out of the exception thus provided.

I conclude that the trust here involved does not violate the rule against perpetuities or, at this stage, offend public

policy. See 2 *Restatement of the Law of Trusts,* § 401.1; 3 *Scott on Trusts,* § 401.9; 2 *Simes Law of Future Interests,* § 591.

We approach now the principal problem involved in this case. The trustee has concluded that it has sufficient principal to build a small Chapel of Ease and Parish House. While it is not clear, presumably the trustee is using "build" in the sense of actual construction only, and not as including a sum sufficient to maintain the physical structures after erection (Baker testimony). The distinction just noted poses the crucial problem of construction involved in this case.

The residuary clause (Item Ninth) gives the property to the trustee to administer and to accumulate income "until, in the opinion of trustee, a sufficient amount has been accumulated, both as to principal and income to build a small Chapel of Ease and a Parish House in connection with St. Anne's Protestant Episcopal Church at Middletown, Delaware, whereupon the corpus or principal of my said residuary estate, together with the accumulations thereon, shall be paid over for the erection of such Chapel and Parish House, such erection to be under the supervision of the Rector of said Church * * *."

The Church contends that, having in mind all the surrounding circumstances, the testator intended that all his residuary estate should go to St. Anne's Church and that "erection" as used in the will should be construed to mean "for the establishment of" or "for the foundation of" or "for the institution of", as opposed to some narrower construction. The defendants urge that "to build" and "erection" as employed by the testator limit the payment to be made by the trustee to the Church to a sum sufficient to construct a small Chapel of Ease and Parish House, and do not include any payment for maintenance, with the result that any surplus passes to the next of kin as intestate property.

The parties indulge in rather elaborate arguments in an attempt to demonstrate that by the use of "to build" in one place and "for the erection of" in another place in the Ninth Item of his will the testator intended to draw a distinction of substance. In my opinion, the words were employed by the testator in the same general sense and it would, therefore, be profitless to attempt to discern his intent from an alleged material distinction between the two quoted expressions. In approaching the decision on this point of construction, I shall, therefore, assume that by the use of these expressions the testator sought to express the same general intent.

Should the testator be said to have used "build" and "erection" in their more restricted sense which confines their meaning to mere construction as opposed to a broader but less common place usage which includes maintenance as well as construction? The defendants point out that the more usual meaning of "to build" and "to erect" does not encompass "to maintain" or "to establish." Thus, they conclude that there is nothing which impels the court to give the words a meaning other than their usual and commonplace meaning. Consequently, the defendants urge this court to apply their construction of the language with the result that the Church would be paid only so much as would be necessary to construct a small Chapel of Ease and Parish House and the balance would pass as intestate property.

The solicitors for the Church cite many definitions for "erection" and "erect". Thus, they cite the following pertinent definitions for "erection" found in *Webster's New International Dictionary, Second Edition*:

"1. Act of erecting; act of raising upright; act of constructing, as a building, or a wall; act of founding or establishing, as a commonwealth; * * *.

"2. State of being erected, lifted up, built, established, or founded; * * *."

The quoted definitions are fairly representative, al-

though it must be pointed out that "build" is used much more often to mean mere construction rather than to include construction and maintenance. The solicitors for the Church point out that several courts have construed "erection" to mean the equivalent of "establishment". Among other cases, they cite *Vaughan v. Farrer*, 2 *Ves. Sr.* 152, 28 *Eng. Rep.* 118; *Cantwell v. Baker*, cited in *Vaughan v. Farrer, supra; Port Huron & N. W. Ry. Co. v. Richards*, 90 *Mich.* 577, 51 *N.W.* 680; *Bell and Another, Ex'rs., v. Briggs, Trustee, etc.*, 63 *N. H.* 592, 4 *A.* 702; *Novak v. Trustees of Orphans' Home in Baltimore City*, 123 *Md.* 161, 90 *A.* 997, *Ann. Cas.* 1915C, 1067. These cases demonstrate no more than what is indicated by the dictionary definitions, namely, "erect" may have a broader meaning than mere construction, depending upon the circumstances. The solicitors for the Church demonstrate by their argument, although they do not so state, that they are contending for a construction of "build" and "erect", which if adopted would constitute an application of a more unusual definition of those words. However, they contend that the surrounding facts demonstrate that their suggested construction will more nearly effectuate what we may fairly say was the testator's intent.

We seek then the sense in which the testator may be said to have employed the terms "to build" and "erection" in the Ninth Item of his will. Did he intend these words to be limited to mere construction, or did he intend them to also embrace maintenance of the completed structures? Obviously, the intent with which the testator may fairly be said to have used the terms in question cannot be discovered by any rigid application of primary dictionary definitions or judicial precedents. The *sui generis* nature of will construction problems was well-recognized by our Supreme Court in *Bird v. Wilmington Society of Fine Arts*, 28 *Del. Ch.* 449, 43 *A.* 2d 476, 480, where it was said:

"* * * Because language of a will is but the vehicle of the thought or the intention of the testator, so the Courts have felt free to give expression to the true intent when it can be ascertained, even though

the so doing may depart from the strict wording of the will. The language of a will, be it the original language of the testator or the language of another and adopted by him, was the language used by the testator in the light of surroundings and circumstances known to him. To take such language then, of and by itself and devoid of the surrounding circumstances, may be the means of giving but an imperfect picture of the thought or intent of the testator. It is this view, then, that impels Courts to metaphorically place themselves at the desk with the testator as at the time of execution of the will, and see with his eyes and to ascertain with his knowledge the meaning of the language used."

The quoted language demonstrates that the highest court of this state has, like most other states, rejected the unrealistic approach to will construction which supposedly requires the discovery of an ambiguity on the face of the will before extraneous evidence will be received. Otherwise stated, it has been clearly recognized that a will does not and cannot stand completely apart from the facts of life which surround it. The extent to which courts accord recognition to these surrounding facts must necessarily vary with each case. By examining the factual background on which this will must be superimposed we may, perhaps, better understand the sense in which the testator used the language under discussion.

The testator was an eminent psychiatrist who for thirty-two years was superintendent of the Elwyn Training School, a school for feeble-minded children. He was a man of great learning and culture. He had a deep and lifelong interest in St. Anne's Church in Middletown. Throughout most of his life, he was one of its substantial financial supporters. After he retired from the Elwyn Training School in the early thirties, his one principal interest was St. Anne's Church. However, for many years theretofore he had expressed the thought of some day providing a Chapel of Ease and Parish House for the Church.

The St. Anne's Church located in Middletown proper is apparently a fairly old Church located in a district where the population is thinly scattered. The evidence shows that

from 1933 to 1938, inclusive, this Church was in poor financial condition. In 1933 the Rector's salary was reduced from $2000 to $1500 per year and the testator personally made up the difference. The total yearly income during the years mentioned was approximately $2600. Its membership fluctuated between 140 and 148 during this period, plus about 30 children. Many of the members were engaged in agricultural pursuits which produced small incomes. The testator, as a member of the Vestry and as one of the Trustees, was well aware of the Church's modest financial condition, because he often was called upon to pay certain extraordinary expenses which the Church was unable to meet.

The evidence further shows that Dr. Barr knew very few of his relatives, and those he did know apparently received specific recognition in his will.

When the testator executed his will on November 10, 1934, his total assets amounted to approximately $219,000, consisting almost entirely of cash and securities. On March 16, 1936, when he executed the last codicil, his assets were worth approximately $216,000. Thus, at the time the will was executed, after allowing for payment of the specific legacies but before payment of taxes and administration expenses, the estate would then have been worth approximately $185,000.

The Girard Trust Company for many years and apparently up until the time of the testator's death conducted an agency account for him, and this account contained the great bulk of the wealth belonging to the testator. The bank rendered quarterly statements to Dr. Barr which indicated receipts, disbursements and investments. Therefore, not only is it a fact that the testator knew the approximate value of his estate, but as our Supreme Court said in *Trustees of Protestant Episcopal Church v. Equitable Trust Co.*, 26 *Del. Ch.* 427, 24 *A. 2d* 327, 330:

"It may [also] be presumed that the testator had constant knowledge of the approximate amount of his estate; * * *."

Having in a limited manner constructed in the present the setting of which Dr. Barr was a part when he executed his will, and having shown some of the pertinent facts in connection with St. Anne's Church which must have been within his knowledge at that time, we again ask ourselves what Dr. Barr intended by the use of the language in his will directing the "erection" of a small Chapel of Ease and Parish House. Looking at the language of the will, it seems reasonably clear that the testator intended all of his property, except that specifically devised, to be used in one way or another for the Chapel and Parish House. I so conclude from the fact that the construction of the Chapel and Parish House is provided for in the residuary clause of the will.

While not exclusive possibilities, it does appear then that the real construction question is whether under his residuary clause, the testator intended that all the residuary estate should be used to construct the Chapel and Parish House, or intended that such estate should be used both to construct and to maintain them. Thus, neither of the suggested alternative constructions, if adopted, would give the testator's next of kin any interest unless the Church saw fit to reject the money because the manner in which it had to be used might render its acceptance unduly onerous. However, the possibility of a subsequent disclaimer by the Church cannot assist in determining the question of construction involved.

In the light of the surrounding circumstances, I conclude that the testator by the use of the words "to build" and "erection" should be said to have intended that the Chapel of Ease and Parish House were to be built and maintained from the funds turned over to the Church pursuant to Item Ninth. While it is a recognized rule of construction that words are generally to be accorded their ordinary meaning, nevertheless, it is equally well-recognized that the context of a will or the surrounding circumstances may impel a court to invoke a less commonplace meaning such as I

have done here.  I shall attempt to set forth the factors which have influenced me in arriving at my decision.

The testator has indicated an intent that all the residuary property should go to the Church.  Apparently, he felt that the amount necessary to accomplish his expressed purpose with respect to the Chapel and Parish House would require not only the corpus and income from the Item Ninth trust as originally created, but also the corpus of the trusts created under the Seventh and Eighth Items of the will.  It happens that for reasons not expressed, the trustee has determined that there is sufficient money "to build" the Chapel and Parish House without the need for the corpus of the Item Eighth trust.  However, it is clear to me that the trustee has decided only that there is at least sufficient funds now available "to build", i. e., erect as opposed to erect and maintain, the Chapel and Parish House.  Clearly then, in operation the testator's intent will be frustrated in part unless we construe "to build" in its broader sense of erection and maintenance.  This is so because under the mere erection interpretation the Chapel and Parish House will be built without the need for the corpus of the Item Eighth trust, and perhaps even before it falls into the residuary estate.  Since it was the intent of the testator that this money should also go to St. Anne's Church, the only way it can go there is to construe the language dealing with the trustee's opinion as to the accumulation of sufficient money to build, to mean build and maintain.  While it can be said that I have used a fact occurring subsequent to the testator's death in aid of construction, nevertheless, it should be noted that I am only using it as a consequence implicit in the language of the will itself.

What are the alternative constructions and what are their consequences?

First, it is argued by the defendants that "to build" and "erection" are to be given their ordinary meaning of mere construction as opposed to construction and mainte-

nance. Under this view there would be a partial intestacy. If the court were required to view the will without the aid of surrounding circumstances, the construction urged would probably be accepted. However, such a construction would frustrate the testator's obvious intent in a substantial manner not only because it would result in the testator's having died intestate as to a substantial portion of his property (corpus of the Item Eighth trust at least) contrary to the spirit of the residuary clause, see 2 *Page on Wills* (*Lifetime Ed.*) § 926, but it would also mean that next of kin unknown to him would share in what he intended to go to the Church alone (assuming without deciding that the doctrine of *cy pres* is inapplicable).

The general plan of the will, and the apparent over-all intent of the testator are not to be lightly disregarded because of a preoccupation with the more commonplace definitions of isolated words employed by a testator unless some substantial and recognized policy is sustained thereby. I find no policy involved here which would require a rigid adherence to primary definitions with a consequent partial intestacy.

A second alternative construction is that all the money must be used for the mere construction of the Chapel and Parish House. However, this construction, if adopted, would have at least two effects which, if reasonably possible, should be avoided. One, the trustee might determine —as it has done here—that it had sufficient money to build despite the fact that the Item Eighth trust had not terminated. In that case, the will in operation would be in conflict with the will as construed with no way available to resolve the conflict short of declaring a partial intestacy, or ignoring certain language of the will. Two, if the trustee had to await the termination of the Item Eighth trust before it could determine when sufficient money had accumulated to build the Chapel and Parish House, we would be restricting the trustee's discretion in a manner not warranted by the

language employed by the testator or by the realities of the situation.

Keeping in mind that the testator intended that his residuary estate (which includes the corpus of the Items Seventh and Eighth trusts) should go to the Church alone, let us consider the financial aspects of this case as they relate to the proper construction of the Ninth Item of the will. Taking the value of the three trusts at the time they were originally set up shortly after the testator's death, we see that they aggregated approximately $160,000. Remembering that the testator knew of the approximate size of his estate from the time he drew his will until he died, it is not unfair to assume that he also knew approximately how much would be ultimately available for the Chapel and Parish House even without the income which would accumulate on the trusts.

Is it realistic to conclude, in view of the surrounding circumstances, that the testator intended to provide for the mere erection of a small Chapel of Ease and Parish House for St. Anne's at Middletown to cost at least $160,000 without concerning himself with their maintenance? Such a result is difficult to imagine when we realize that during the period between the date of the execution of the will and the testator's death the Church was composed of about 140 members and had an annual income of about $2600. Moreover, the Church was supported to a substantial extent by Dr. Barr himself, and this support would disappear upon his death. No one knew better than the testator that the financial condition of St. Anne's at Middletown was totally inadequate to support structures of the type contemplated unless provision was also made for their maintenance. Nor was there anything which would have warranted the testator in concluding that the financial prospects of St. Anne's Church would so improve within the reasonably foreseeable future that funds to maintain such a Chapel and Parish House might be available.

Also, it should be noted that the testator intended these structures to be a memorial to his father, mother, brother and aunt. The permanence of this memorial cannot be fairly assured unless the means to maintain it are provided. In point of fact, it is perfectly conceivable that the Church would be unable to accept the Chapel and Parish House without the funds also being supplied to provide for their maintenance. In this case the testator's intent would be completely frustrated.

Aside from the factors I have mentioned, several well-recognized rules of will construction call for the application of a definition of "to build" and "erection" which encompasses maintenance as well as construction. Thus, our Supreme Court said in *Trustees of Protestant Episcopal Church v. Equitable Trust Co., supra*: "Charitable bequests are construed liberally to carry into effect the testator's intention, and every presumption consistent with the language used will be indulged to sustain them." I have previously called attention to the strong presumption against intestacy which has particular application here and also to the rule of construction which requires the court to ascertain the testator's general scheme or plan of disposition and give effect thereto rather than to seize upon isolated words, phrases, or even sentences and consider them as decisive.

The defendants urge that to construe "erection" to mean maintenance as well as construction would result in the giving of the power of supervision over maintenance as well as construction to the Rector. Assuming this result to follow, I do not believe it thereby purports to transfer any existing legal obligation from the corporate officials of the Church to the Rector. Nor does it give the legal control of the fund for maintenance to the Rector rather than to the proper corporate officials.

Having concluded that the Ninth Item of the testator's will should be construed as providing funds for the construc-

tion and maintenance of a small Chapel of Ease and Parish House, it becomes important to reconsider the trustee's duty in the light of such a construction.

The trustee apparently decided in December 1945, that enough principal and income had accumulated and was available to construct a small Chapel of Ease and Parish House. It appears to me that the trustee in forming its opinion was concerned only with an amount of money sufficient to construct the buildings and not to construct and maintain them. Since I have concluded that its duty is to accumulate sufficient money to construct and maintain a Chapel and Parish House, the trustee will be required to reconsider the matter and formulate its opinion in the light of the construction reached by the court. In formulating its opinion, the trustee will consider that the corpus of the Item Eighth trust will eventually pass through it as trustee of the Item Ninth trust to the Church for the purposes mentioned.

The trustee has already decided that there is sufficient money to construct a Chapel and Parish House. It is apparent, therefore, that it will only be concerned with the problem of ascertaining what additional amount will be necessary to maintain the structures. This gives rise to another substantial problem. Must the trustee accumulate and pay to the Church, an amount which, when invested, will produce an income sufficient to maintain the structures, or has it some other duty in this respect? It is apparent that unless a sum is turned over to the Church which, when invested, will produce sufficient income to maintain the structures, the intent of the testator will not be fully carried out. I have already pointed out that these buildings are to constitute a memorial, and their maintenance cannot be assured unless the use of the money provided for their maintenance is strictly limited to that purpose. Any other use of the money would be at variance with the general scheme of disposition expressed by the testator in his will. It is my conclusion that the trustee must accumulate

and pay to the Church a sum which, when invested, will produce sufficient income to maintain the structures.

The money turned over to the Church for the construction of the buildings must be used by the Church for that purpose only, and the money turned over to the Church for the maintenance of such structures must be used for that purpose only. The Church will take such money as trustee thereof to apply it for the purposes designated. See *Hutton, Ex'r., v. St. Paul Brotherhood, supra; Delaware Land & Development Co. v. First and Central Presbyterian Church, supra.* While there may be cases where a charitable corporation takes property absolutely rather than in trust, this is not such a case. See generally 3 *Scott on Trusts,* § 348.1; 130 *A.L.R.* 1101.

For the guidance of the Girard Trust Company as trustee, it is pointed out that it must take into consideration the fact that the corpus of the Item Eighth trust will ultimately be available for transfer by it to the Church. It is the conclusion of the court, however, that the trustee is not required as a matter of law to await the termination of the Item Eighth trust before paying over the money presently held under the Item Ninth trust. It is conceivable that the trustee can approximate when the corpus of the Item Eighth trust will be available to the Church and it can, therefore, consider the corpus of the Item Eighth trust as a factor in arriving at its ultimate determination as to when a sufficient amount has accumulated, or will accumulate to pay for the cost of constructing the Chapel and Parish House, and to provide the Church with a sum which, when invested, will probably produce sufficient income to maintain the structures.

It is evident from the foregoing conclusions of the court that the trustee must decide approximately how much money is to be spent for the construction of the buildings. Otherwise, it will be in no position to estimate the probable amount of corpus needed to produce an income sufficient

to maintain them. The trustee is, therefore, instructed that it must determine the amount to be spent for the construction of the two buildings, and pay such amount to the Church with the explicit direction that such money is to be used for that purpose alone. Once the trustee has paid over the money to the Church for that purpose, accompanied by the direction mentioned, the trustee is relieved of all responsibility as to the application of the funds. When the trustee pays over to the Church the money which is to be used to provide income for the maintenance of these buildings with the instruction that the money is to be held in trust to be used for the purpose mentioned, it shall thereafter be relieved from all responsibility with respect to the application of those funds. Since it is quite possible that the trustee will not pay over at one time all the money which is to be used to provide for the maintenance of these structures, the instructions given to the trustee apply to each payment made by it to the Church.

In arriving at my conclusions I have not relied upon any testimony which could be said to constitute direct statements of the testator as to what he meant by the use of the language employed in his will. The same is true of the evidence dealing with the manner in which the taxing authorities treated the will.

A decree accordingly will be advised.