WILLIAM A. CAMPBELL and JAMES V. CAMPBELL, Executors under the Last Will and Testament of Mary M. Campbell, deceased,

*vs.*

ST. JOSEPH'S INDUSTRIAL SCHOOL, an unincorporated school, LITTLE SISTERS OF THE POOR, INCORPORATED, a corporation of the State of Delaware, WILLIAM A. CAMPBELL and JAMES V. CAMPBELL.

*New Castle, July 17, 1947.*

*Clair J. Killoran,* of Killoran & Van Brunt, for complainants.

*Joseph A. L. Errigo,* for defendant St. Joseph's Industrial School.

*E. Ennalls Berl* and *James L. Latchum,* of Southerland, Berl & Potter, for defendant Little Sisters of the Poor, Inc.

*Charles L. Paruszewski,* for defendants, William A. Campbell and James V. Campbell.

SEITZ, Vice-Chancellor: The court must determine what property the testatrix intended to pass by the use of the word "money" in her will.

The testatrix, Mary S. Campbell, a single woman, died on August 17, 1929, survived by her mother Mary M. Campbell and two brothers, William A. Campbell and James V. Campbell. The testatrix left a will dated August 10, 1929, which was prepared by her and written and signed in her handwriting. I shall quote the will in its entirety.

"New Castle, Aug. 10, 1929

"After all my debts are paid, I appoint my mother, Mary M. Campbell, as my executor without out bond.

"I want her to take $500 and place it in some reliable trust fund. The income of which shall be used as a perpetual care fund, for the upkeep of my fathers' and brothers grave, and the care of the old Campbell family lot in St. Peters' cemetery.

"I want $1,000 given to the Superior of the Josephite Order whoever, he may be·at the time of my death, to be distributed among missionary priests by him for Masses to be said for the repose of my soul.

"I also want my mother to place in the chapel of St. Joseph's, Clayton, a suitable shrine to the Little Flower

"I give my little house, in New Castle, to my mother, to do as she pleases with it.

"She shall also receive the income of all money left by me, as long as she lives.

"At her death the income shall go to William A. Campbell and James V. Campbell, in equal shares as long as they live.

"At their death the principal shall be given to the Little Sisters' of the Poor, St. Jos. Industrial School Inc. at Clayton, Del. in equal shares.

"Witnesses.                                          Mary S. Campbell
"Elizabeth L. Lofland.
"Elizabeth A. Tobin."                                Aug. 10, 1929"

The testatrix died possessed of checking and savings accounts amounting to $1,096.37, building and loan shares and shares of stock amounting to $3,649.28, and bonds and accrued interest thereon amounting to $17,290.75. Thereafter, Mary M. Campbell, the mother of the testatrix, took possession of the personal property left by the testatrix. Reference herein to "personal property" does not include the property specifically bequeathed by the daughter.

On June 17, 1946, Mary M. Campbell, the mother, died leaving a will which, after making certain specific legacies, gave the entire residue of her property to her two sons, William A. Campbell and James V. Campbell. Her sons were also named as executors.

When the two sons came to make distribution of their mother's estate, they entertained substantial doubt as whether the life income provisions in their sister's will applied to all her personal property, or only to the money on deposit in bank. Since it was necessary for the executors to have this doubt resolved before making distribution under the residuary clause of their mother's will, they filed this bill seeking a construction of the provisions of their sister's will dealing with the disposition of her personal property.

The individual defendants are William A. Campbell and James V. Campbell, the sole beneficiaries under the residuary clause of their mother's will. They contend that "money" as used in their sister's will had reference only to the money on deposit in bank (approximately $1,000), and that as a consequence she died intestate as to the remainder of her personal property amounting to approximately $21,-000. Since Mary M. Campbell, as the mother of Mary S. Campbell, was entitled to all of the daughter's intestate property, the sons contend that her personal property other than the cash in bank passed to their mother outright, and now passes to them under the residuary clause of their mother's will.

The other defendants are St. Joseph's Industrial School, an unincorporated school, and Little Sisters of the Poor, a Delaware corporation. These defendants contend that "money" as used in the will of Mary S. Campbell encompassed all of her personal property and not only the money on deposit in bank, and that as a consequence her mother possessed and her sons now possess only the right to receive income from all of the personal property during life, and that upon the death of William A. and James V. Campbell, all the personal property passes outright under their sister's will to Little Sisters of the Poor and St. Joseph's Industrial School, in equal shares.

All parties in interest have stipulated with the approval of the court that whatever property St. Joseph's Industrial School, an unincorporated school, may be entitled to receive under the will of Mary S. Campbell will be properly distributed if it is given to St. Joseph's Society for Colored Missions of Delaware, a Delaware corporation. The parties have also stipulated that as to all income which William A. and James V. Campbell are entitled to receive from any property left by Mary S. Campbell pursuant to her will, such income shall be payable to them in equal shares during their joint lives, and the whole of such income shall be payable to the survivor of them during the remainder of his life. The decision of the court and the decree thereon will give full recognition to these stipulated matters.

We come now to the principal problem of construction. What personal property may we fairly say the testatrix intended to refer to by the language "all money left by me"?

One thing is certain. "Money" has many meanings depending upon the particular usage. See 93 *A.L.R.* 514, *et seq.* In construing the word "money," the English courts long ago adopted the rule of construction that the word "money" when used in a will meant "money" in the strict sense (whatever that means), unless the context showed that a different interpretation was warranted. See *In re*

*Gates,* [1929] 2 *Ch.* 420. The rule as stated appears to have been followed in most of the courts of this country. See 93 *A.L.R.* 514, 515.

While the ultimate result may be the same in most cases no matter which rule is adopted, I prefer not to adopt a general rule of construction which gives inflexible priority to any particular meaning of the word "money" when used in a will. Rather, I approve the language of Lord Chancellor Simon in the House of Lords in *Perrin, et al., v. Morgan, et al.,* [1943] 1 *A.C.* 399, 406, 407, 408, where the majority of the court apparently repudiated the old rule of construction:

"* * * In the case of an ordinary English word like 'money', which is not always employed in the same sense, I can see no possible justification for fixing on it, as the result of a series of judicial decisions about a series of different wills, a cast-iron meaning which must not be departed from unless special circumstances exist, with the result that this special meaning must be presumed to be the meaning of every testator in every case unless the contrary is shown. I agree, of course, that, if a word has only one natural meaning, it is right to attribute that meaning to the word when used in a will unless the context or other circumstances which may be properly considered show that an unusual meaning is intended, but the word 'money' has not got one natural or usual meaning. It has several meanings, each of which in appropriate circumstances may be regarded as natural. * * * I protest against the idea that, in interpreting the language of a will, there can be some fixed meaning of the word 'money,' which the courts must adopt as being the 'legal' meaning as opposed to the 'popular' meaning. The proper meaning is the correct meaning in the case of the particular will, and there is no necessary opposition between that meaning and the popular meaning. The duty of the court, in the case of an ordinary English word which has several quite usual meanings which differ from one another is not to assume that one out of several meanings holds the field as the correct meaning until it is ousted by some other meaning regarded as 'non-legal', but to ascertain without prejudice as between various usual meanings which is the correct interpretation of the particular document."

If this court is to reach its avowed objective—the probable intent of the testatrix—it must not fasten any so-called "legal" definition on the words employed in the will, but rather it must try to discover the sense in which the testatrix employed the doubtful language, even if the search leads

"through the looking-glass." We must here ascertain then, without prejudice to any particular meaning, what personal property the testatrix intended to encompass by the use of the word "money" in her will. Since it is pedestrian to state that we seek the intention of the testatrix, it must follow that the problem is to be resolved by considering the language of the will and the surrounding facts which we may fairly say were within the knowledge of the testatrix.

Initially, the will was prepared and written by the testatrix, and it is quite apparent that she was neither learned in the law nor particularly careful in her choice of words. The will must be construed in the light of such facts.

A consideration of the sequence of the provisions of the will throws some light on the problem before us. First, the testatrix appoints her mother executrix. She then directs that $500 be put in trust for the upkeep of the family cemetery lot. She next gives $1,000 for masses, and then provides for the erection of a Shrine to the Little Flower in the Chapel of St. Joseph's School at Clayton, Delaware. Having made these specific bequests, she follows them by a provision devising her house to her mother. The testatrix then gives her mother, so long as she lives, the income of "all money" left by her, and on her death, the income goes in equal shares to her brothers as long as they live, and upon their death the "principal" of the "money" passes outright in equal shares to the Little Sisters of the Poor and St. Joseph's Industrial School.

Thus, the will contains specific bequests followed by a devise of real estate, and concludes with a bequest of "all money" in trust with two charities named as the ultimate beneficiaries of the principal. The last provision dealing with all of her money seems, not only from its position in the will, but also from the language employed, to have been intended as a catchall. The absence of language representing what we know as a residuary clause only serves here to

emphasize that the testatrix probably intended "all money" to encompass all of her personal property otherwise undisposed of in her will.

Not only may we presume that the testatrix knew the approximate size of her estate but since the will was drawn only seven days before her death, it is fair to infer that she was actually aware at that time of the size and nature of what was to be her estate. See *Girard Trust Co. v. Rector, Wardens and Vestryment of St. Anne's Church, ante p.* 1, 52 *A. 2d* 591. Yet, the testatrix only had $1,096.37 in her checking and savings accounts when she died. Consequently, if the testatrix intended "money" as used in her will to mean only the money in these accounts, as the individual defendants contend, then she created a trust with a corpus of about $1,000 which was to continue for the lives of her mother and her two brothers. It must be recognized that the return on a trust of that size, even in 1929, would only produce a very small amount. In view of the close relationship of the testatrix to the life beneficiaries, I cannot believe that she intended that they were to be the recipients of such an insignificant amount. The point is emphasized by the fact that upon the mother's death this small income would have to be divided equally between the two brothers.

Moreover, the testatrix took the trouble shortly before her death to prepare and execute a will. Yet, if we construe "money" to mean only money in bank, we are in fact saying that the testatrix only intended her will to cover a fraction of her entire estate, and did not desire her will to touch the balance of her property. Aside from the presumption against intestacy, such a consequence is not to be lightly embraced. See *Pohlman v. Pohlman,* 150 *Ky.* 679, 150 *S.W.* 829; *In re Cadogan,* [1883] *L.R.* 25 *Ch. Div.* 154.

The testatrix made specific provisions in her will for her mother and her two brothers, so it cannot be said that she overlooked the natural recipients of her bounty. They were her only close relatives living at the time her will was executed. Since she provided for these relatives, are we

to conclude that she was only concerned with the disposition of an insignificant portion of her personal estate? I think not. Moreover, no reason is suggested why the testatrix would take the trouble to leave only approximately $1,000 in trust, and would leave the bulk of her personal estate untouched.

Furthermore, the will shows that the testatrix was concerned with her spiritual welfare, and it also indicates that she had a real interest in the Little Sisters of the Poor and St. Joseph's Industrial School—both charitable institutions entitled to somewhat more consideration than would otherwise be the case. See *Girard Trust Co. v. Rector, Wardens and Vestryment of St. Anne's Church, supra.* Consequently, by adopting a construction which will make these charitable corporations the ultimate beneficiaries of her entire personal estate, the court is not thereby benefiting unduly someone in whom the testatrix had only a casual interest.

The individual defendants concede that the money in the checking and savings accounts is covered by the term "money" as used in the will here involved. It is apparent that this is a tacit recognition that "money" was intended to mean more than mere cash because legally money in bank is a debt due, rather than cash in the "strict sense" of the word. Unrestricted by any presumption as to its meaning, we are forced to conclude from the surrounding language and facts that it was intended to cover all her personal property.

The individual defendants assert, however, that this court cannot rewrite this so as to insert an appropriate provision to avoid a partial intestacy. While this is doubtless true, nevertheless, the court is free to adopt a reasonable construction which will result in a complete disposition of property rather than one which will result in an intestacy as to a great part of the estate. This is particularly true here since to sustain the construction advanced by the individual defendants would result in an intestacy as to over

ninety per cent of the personal estate. While such a consequence is not in and of itself a determinative factor in construing a will, it is substantial evidence, under circumstances such as are here present, that the adoption of a construction with such a consequence would run counter to the intent with which the testatrix probably employed the word requiring construction.

I conclude that by the use of the word "money" in her will the testatrix intended to include her stocks, bonds and building and loan shares as well as her money in bank.

Consequently, the mother was entitled to receive the income from such personal property for her life, and the individual defendants are now entitled to receive the income thereon in equal shares for their joint lives, and the survivor of them will be entitled to all such income until his death. Upon the death of the surviving individual defendant, the personal property passes outright in equal shares to St. Joseph's Society for Colored Missions of Delaware and Little Sisters of the Poor.

A decree accordingly will be advised.