**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

In the Matter of Trusts F/B/O Marie C. )
Thomas Under Agreement of Charles D. )   C.A. No. 2020-0698-MTZ
Thomas Dated December 17, 1986, as )
Amended )

### ORDER DENYING PETITIONERS' MOTION FOR JUDGMENT ON THE PLEADINGS

WHEREAS, the Court having considered the petitioners' motion for judgment on the pleadings (the "Motion"), it appears as follows:

A.    This action arises out of the disputed interpretation of the Revocable Trust of Charles D. Thomas dated December 17, 1986, as amended (the "Trust"). On the petitioners' motion for judgment on the pleadings, I draw the following background from the petition and answer.

B.    Petitioners Donna Riesenberger and Mary Beth Pala ("Petitioners") are the daughters and agents of Marie C. Thomas ("Marie")[1]. Marie is the surviving spouse of the deceased testator, Charles D. Thomas ("Charles"), and a current beneficiary of the Trust. Respondents Charles D. Thomas, Jr. and Lo Ann Thomas ("Respondents") are Dr. Thomas's children – Marie's stepchildren – and acting co-trustees under the Trust. Respondents and their two siblings are remainder beneficiaries under the Trust.

---

[1] In this family dispute, I use first names in pursuit of clarity. I intend no familiarity or disrespect.

1

C.     Charles created the Trust in 1986.  During his life, all the Trust's net income was distributed to Charles.[2]  Article 4 of the Trust addresses how it would function in the event of Charles's death.  Charles amended the Trust in 1992, 2005, 2006, 2015, and 2018.  In each of these iterations, Article 4 directed that Marie should receive income; some amendments directed that she also receive a lump sum distribution. [3]

D.     In 2018, Charles amended the Trust to its current iteration, removing the lump sum distribution and inserting the language at issue in Section 4A:  "If my wife survives me, she shall receive the minimum distribution from my IRA's that can be taken to use for her medical and living expenses."[4]  "[M]y IRAs" refers to one particular IRA that names the Trust as beneficiary, which I will refer to as the "Trust IRA."

E.     Though Section 4A specifically benefits Marie, Section 4 as a whole also provides for Charles's children.[5]  Section 4C(2) directs that upon Marie's death or remarriage, "Trustee[s] shall distribute the remaining principal, on a *per stirpes*

---

[2] *See* Compl. Ex. A.

[3]  *Id.*  The 1986, 1992, and 2005 editions of the Trust, entitled Marie to "all of the net income [of the trust] until her death or remarriage."  The 2006 and 2015 amendments entitled Marie to all of the net income of the trust plus an additional $100,000 one-time lump sum.  *See* Compl. Exs. E–F.

[4] *See* Compl. Ex. H.

[5] *See* Compl. Ex. G at 3.

2

basis, to my issue who survive me."[6] The Trust defines "issue" as synonymous with "children."[7]

F.      Charles passed away on February 5, 2019. Respondents became co-trustees, and Article 4 took effect. That year, pursuant to Section 4A, Respondents distributed to Marie the Trust IRA's entire required minimum distribution ("RMD"), as determined by the Internal Revenue Service ("IRS").

G.      In 2020, at the advice of new counsel, Respondents did not make any distribution to Marie. Respondents asserted The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, § 2203, allowed them to forego taking the RMD from the Trust IRA in 2020 and making any distribution to Marie that year.[8]

H.      That decision inspired Petitioners to bring this action, filed on August 24, 2020. In Count I, Petitioners seek a declaratory judgment that under Section 4A, the trustees must withdraw the RMD every year and distribute it to Marie in its entirety, and that the trustees have no discretion in making said distribution; and an order directing the trustees to withdraw the RMD and convey those funds to Marie.

---

[6] *See id.*

[7] *See* Compl. Ex. A; Compl. Ex. C (amending "children" to include "Charles D. Thomas Jr., LoAnn Thomas, Felecia L. Thomas and Karen C. Crosby").

[8] Docket Item ("D.I.") 5 at 11-15; The Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 2203, 134 Stat. 281 (2020).

In Count II, Petitioners claim Respondents breached their fiduciary duty "as a result of their failure to make distributions required by the Trust."[9]

I.     On September 29, 2020, Respondents answered the petition. Respondents assert that Section 4A entitles Marie to a Trust IRA distribution capped at the minimum amount required to pay for her medical and living expenses.[10] Respondents argue that because Marie failed to supply an itemized bill of her medical and living expenses, they did not know the minimum amount required for those expenses, and were not required to compensate her until that amount was identified.

J.     On October 9, Petitioners moved for judgment on the pleadings; they filed their opening brief on November 3. Respondents filed their answering brief on December 3, and Petitioners submitted their reply brief on December 18. A dispute over sur-replies spanned the first few months of 2021 until it was resolved, and argument was scheduled. I heard argument on July 1, 2021. The parties did not dispute Marie was entitled at a minimum to the amount necessary to pay her medical and living expenses, so I ordered that amount to be paid while the broader dispute

---

[9] Compl. ¶ 28.

[10] At argument, Respondents conceded that Marie was owed a distribution in 2020. D.I. 27 at 50:4–14; 27:20–23; 36:17–23; 43:5–22. Respondents have paid that distribution, in part or in full. D.I. 28, 29. As explained below, the propriety of the trustees' 2020 response to the CARES Act will be adjudicated another day.

was under advisement.[11]  On July 16, Respondents notified the Court that they had received an itemized receipt of Marie's medical and living expenses from Petitioners, and compensated her for those expenses for 2020 through July 1, 2021.[12] Petitioners dispute that the distribution encompassed all of Marie's expenses.[13]

K.      "In determining a motion under Court of Chancery Rule 12(c) for judgment on the pleadings, a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[14]

L.      The guiding principle of trust interpretation is well established:  the Court's mandate is to discern and honor the settlor's intent.[15]  When construing a trust, this Court attempts to discern the settlor's intent as expressed by the instrument, read as a whole, in light of the circumstances surrounding its creation.[16] With that in mind, "[t]he words used in the [trust] generally are given their ordinary meaning and the Court will not consider extrinsic evidence to vary or contradict express provisions of a trust instrument that are clear, unambiguous and susceptible

---

[11] D.I. 26.

[12] D.I. 28.

[13] D.I. 29.

[14] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[15] *Dutra de Amorim v. Norment*, 460 A.2d 511, 514 (Del. 1983).

[16] *Id.*

5

of only one interpretation."[17]  To determine the ordinary meaning of words not defined in the instrument, the Court will turn to the dictionary for assistance.[18]  In determining the settlor's intent the "court will prefer an interpretation that gives effect to each term of an agreement . . . to any interpretation that would result in a conclusion that some terms are uselessly repetitive."[19]

M.     A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty[.]"[20] Determining a breach naturally involves findings of fact,[21] "which generally cannot be resolved on the pleadings or without first granting an adequate opportunity for discovery."[22]

---

[17] *Wilm. Tr. Co. v. Annan*, 531 A.2d 1209, 1211 (Del. Ch. 1987).

[18] *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("[U]nder well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.").

[19] *In re Peierls Fam. Inter Vivos Trs.,* 77 A.3d 249, 265 (Del. 2013) (quoting *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 287 (Del. 2001)).

[20] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. Apr. 3, 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

[21] *Voigt v. Metcalf*, 2020 WL 614999, at *28 (Del. Ch. Feb. 10, 2020) ("[D]irectors' compli[ance] with their fiduciary duties . . . requires fact-specific analyses[.]"); *Wallace ex rel. Cencom Cable Income P'rs II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 n.39 (Del. Ch. Oct. 12, 1999) ("[B]reaches of fiduciary duty [are] more readily and carefully addressed after fact finding rather than by pre-trial dispositive motion."); *Matthew v. Laudamiel*, 2014 WL 5904716, at *3 (Del. Ch. Nov. 12, 2014) ("[W]hether there was . . . a breach of fiduciary duties . . . is a question of fact that cannot be resolved on this . . . record[.]").

[22] *Desert Equities, Inc.*, 624 A.2d at 1208; *see also In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 198–99 (Del. Ch. Aug. 27, 2020); D.I. 27 at 23:18–21, 11:7–12

**IT IS HEREBY ORDERED** this 2nd day of August, 2021:

1.      The Motion is **DENIED** as to Count I.

    a.      As clarified at argument, it appears the parties no longer dispute that the Trust mandates Marie receive a distribution every year; the parties only dispute the amount.  Still, in pursuit of clarity, I note that the term "shall" is a mandatory term.[23]  Accordingly, the phrase "shall receive the minimum distribution from my IRA's" is a mandatory directive, which requires the trustees to give Marie a distribution every year.

    b.      The issue presented is whether Marie's distribution must be the total amount of the Trust IRA's RMD, or some smaller amount capped at her medical and living expenses.  Resolving this issue requires construing Section 4A's phrase "the minimum distribution from my IRA's that can be taken to use for her medical and living expenses."  Petitioners parse the language into two phrases.  First, Petitioners contend "minimum distribution . . . that can be taken" is synonymous with the RMD.  Second, Petitioners construe "can be taken to use for medical and living" to permit Marie to use whatever portion of the RMD she wants for medical and living expenses, and spend or save the rest as she wishes.  Under Petitioners'

---

(Petitioners' counsel acknowledging Count II may be better decided with the benefit of discovery).

[23] *See Tigani v. Tigani*, 2021 WL 1197576, at \*23 (Del. Ch. Mar. 30, 2021); *Branin v. Stein Roe Inv. Couns., LLC*, 2014 WL 2961084, at \*5 (Del. Ch. June 30, 2014); *Stockman v. Heartland Indus. P'rs, L.P.*, 2009 WL 2096213, at \*6 (Del. Ch. July 14, 2009).

reading, Marie is entitled to the entire RMD as established by the IRS. Respondents parse the language as one phrase, "minimum distribution . . . that can be taken to use for her medical and living expenses," which they contend means Marie's distribution from the Trust IRA is capped by Marie's medical and living expenses. Under Respondents' reading, Marie is entitled only to the minimum dollar amount necessary to pay her medical and living expenses.

  c. I agree with Respondents. Petitioners' interpretation fails as "uselessly repetitive."[24] Petitioners dilute the meaning of Charles's language by equating Charles's chosen phrase of "minimum distribution . . . that can be taken" with the IRS's official RMD term, and by interpreting "can be taken to use for medical and living" to give Marie discretion to use the funds in that manner if she wishes. In contrast, Respondents' interpretation gives Charles's chosen language specific meaning: the "minimum distribution" is an amount other than the RMD, and "can be taken to use for medical and living expenses" sets the amount of Marie's distribution. Respondents' interpretation respects the settlor's longstanding intention of providing for Marie and honors the Trust's specific language.

  d. Respondents' interpretation also respects the settlor's intention of funding the Trust with principal for his children. Following Charles's death, the Trust directed various distributions and the sale of real property held in the Trust,

---

[24] *See Peierls Fam. Inter Vivos Trs.*, 77 A.3d at 265.

8

leaving no principal remaining.[25] "It is fair to infer that the testator . . . was aware of his own assets at the time of the execution"[26] and that Charles intended to exhaust the Trust principal at the time of his death. But Sections 4B and C(2), drafted contemporaneously with Section 4A, reference the "remaining principal," with its income to be paid to Marie and the principal itself to be distributed to Charles's children upon Marie's death or remarriage.[27] With the Trust IRA as the only Trust asset, holding the portion of the RMD not distributed to Marie in the Trust as "remaining principal" gives Sections 4B and C(2) "the force and effect [they] demand[],"[28] and allows a harmonious reading with Section 4A.

---

[25] *See* D.I. 5 ¶ 12; D.I. 27 at 26:13-19; Compl. Ex. G, Article 2A; Compl. Ex. A, Article 11 (distributing trust assets to pay estate debts).

[26] *President, Dirs. & Co. of Farmers Bank of Del. v. Del. Tr. Co.*, 95 A.2d 45, 45 (Del. Ch. 1953); *accord  Del. Tr. Co. v. Del. Tr. Co.*, 95 A.2d 569, 573 (Del. Ch. 1953) ("The testatrix knew of her assets and the return on trust investments."); *Campbell v. St. Joseph's Indus. Sch.*, 53 A.2d 768, 771 (Del. Ch. 1947) ("[W]e [may] presume that the testatrix knew the approximate size of her estate."); *Girard Tr. Co. v. Rector, Wardens & Vestrymen of St. Anne's Protestant Episcopal Church*, 52 A.2d 591, 600 (Del. Ch. 1947) ("[I]t [is] a fact that the testator knew the approximate value of his estate[.]"); *Tr's. of Protestant Episcopal Church of Diocese of Del. v. Equitable Tr. Co.,* 24 A.2d 327, 330 (Del. Ch. 1942) ("It may be presumed that the testator had constant knowledge of the approximate amount of his estate."); *see also* Ans. ¶¶ 12, 16 (noting Charles engaged in additional purposeful estate planning, placing CD's in joint names with Marie and naming her the direct beneficiary of a separate IRA); Compl. Ex. A ¶¶ 3A-C, E (establishing estate distribution plan following Charles's death to a marital trust for tax purposes, displaying knowledge of his estate, foresight, and intentional distribution of assets).

[27] *See* Compl. Ex. G at 3.

[28] *Hajoca Corp. v. Sec. Tr. Co.*, 25 A.2d 378, 383 (Del. Super. Ct. 1942).

e.      Accordingly, I interpret Article 4 to mandate the Trustees to make distributions from the Trust IRA to the Trust; distribute from the Trust to Marie funds sufficient to pay her medical and living expenses; leave the rest of the Trust IRA distribution as Trust principal; distribute income from that principal to Marie; and convey the Trust's principal to the remaining beneficiaries upon Marie's death or remarriage. Read as a whole, Article 4 indicates Charles intended for the Trust IRA distributions to benefit both Marie and his children.

2.      The Motion is **DENIED** as to Count II. "[T]he most fundamental duty of a trustee is the [] duty of loyalty to the beneficiaries . . . ."[29] In this case the trustees have simultaneous duties to Marie and the contingent beneficiaries to "manag[e] trust property . . . with skill, care, diligence and prudence in light of the circumstances. . . [while] exercis[ing] the skill and care that a man of ordinary prudence would exercise in dealing with his own property."[30] Petitioners claim Respondents acted disloyally in their stingy construction of Marie's distribution and the CARES Act, while Respondents plead they were acting with due care, loyalty, and the advice of counsel to preserve the Trust corpus.[31] Reviewing these pleadings in a light most favorable to Respondents, I cannot conclude that the trustees breached

---

[29] *George Gleason Bogert et al.*, *The Law of Trusts and Trustees* § 543 (3d ed. 2020).

[30] *Lynch v. Barba*, 2018 WL 1613834, at *4 (Del. Ch. Apr. 3, 2018) (internal quotation marks omitted).

[31] *See* Ans. ¶16; D.I. 11 at 14-15.

10

their duties to Marie and failed to "manag[e] trust property . . . with skill, care, diligence and prudence"[32] when they declined to make Marie's 2020 distribution.[33]

3.      Counsel shall confer on efficient means to make Marie's distributions in compliance with the above interpretation of Section 4A, and on a scheduling order for Count II.

    /s/ Morgan T. Zurn    
Vice Chancellor

---

[32] *Lynch*, 2018 WL 1613834, at *4.

[33] *See Tigani*, 2021 WL 1197576, at *15 ("A trustee does not breach its fiduciary duties by pursuing a strategy to provide for the current beneficiary while preserving the corpus for a remainder beneficiary."); *e.g., Lynch*, 2018 WL 1613834; *Deemer v. President, Dirs. & Co. of Farmers Bank of State of Del.*, 39 A.2d 653 (Del. Ch. 1944).