[No. 14743. Department One. July 9, 1918.]

*In the Matter of the Estate of* BONHAM GALLAND. JESSE A. GALLAND *et al., Appellants,* v. SEATTLE TRUST COMPANY *et al., Respondents.*[1]

PERPETUITIES—CHARITABLE BEQUESTS—IMMEDIATE GIFT. A bequest of a trust fund to establish an orphanage vests immediately, and the rule against perpetuities does not apply, where the bequest was to a trustee to invest the fund for the establishment of the home, and appointed five trustees as a managing board to have charge when, by its own accumulations or by other contributions, the fund reached a certain sum, which was to be a perpetual benefaction without condition or restriction.

Appeal from an order of the superior court for King county, Davidson, J., entered September 14, 1917, upon sustaining a demurrer to the petition, dismissing proceedings for the construction of a will. Affirmed.

*Beeler & Sullivan* and *Samuel E. Kenney,* for appellants.

*Aubrey Levy,* for respondents.

TOLMAN, J.—This is an appeal from an order of the superior court for King county, sustaining the respondents' demurrer and dismissing the appellants' petition for the construction of the will of Bonham Galland, deceased.

The proceeding was brought by the appellants for the purpose of obtaining a construction of the last

[1]Reported in 173 Pac. 740.

will and testament of Bonham Galland, deceased, and seeking to have the residuary devise and bequest in said will declared void on the ground that it violates the rule against perpetuities. The appellants are the heirs at law of Bonham Galland, and will inherit the property attempted to be disposed of by the residuary clause, if such clause be held void.

The will under consideration was executed on June 2, 1915, and the testator having died in the meantime, the will was admitted to probate on the 10th day of November, 1915, by the superior court of King county. The will, after providing for certain definite and specific bequests of money and personal effects, and for the payment of the inheritance tax upon all such bequests, proceeds to dispose of the residue, and probably the great bulk of the estate, in the following language:

"First. I give, devise and bequeath unto the Seattle Trust Company, a corporation of Seattle, Washington, and to its successors, all the rest, residue and remainder of my property and estate of whatsoever kind or character and wheresoever situated, owned by me at the time of my death, with as full and ample power, authority and discretion as I would have if living, to hold, control and manage, to bargain, sell, convey, mortgage, lease, or otherwise to manage, control, dispose of, settle and distribute the same, or any part thereof, or any interest therein, with or without notice, in one or more parcels, at such times and for such prices as in its judgment shall be deemed for the best interests of my estate, beneficiaries and legatees, and I expressly relieve any and all purchasers of any duty or liability as to the proper application of the proceeds or moneys paid to my said trustee, all in trust however, to and for the following uses and purposes, that is to say:

"Second. It is my will and I hereby order, direct and empower my said trustee to invest said fund in interest bearing securities, and the trust fund hereby

created shall be known as the Bonham Galland Trust; to be used for the establishment of a shelter for orphans and homeless Jewish children, to be located in Seattle or vicinity, as hereinafter more particularly mentioned.

"Third. I hereby constitute and appoint five members of the Temple de Hirsch, to be selected at any regular meeting of the said Temple de Hirsch, as a managing board to have charge of said trust fund when the same shall by its own accumulations or by other contributions thereto, aggregate, inclusive of the four acres of land that I now own at Orchard Beach, the sum of fifty thousand dollars ($50,000), and thereupon the said trust company shall deliver to said managing board all of said trust fund, less the proper and legitimate fees for administering the same, and upon such delivery said trust shall cease. The receipt of the president of the Temple de Hirsch, who shall be *ex-officio* president of said managing board, shall be a full discharge of the said trust company, and the said trust company is hereby directed that, when the president of the said Temple de Hirsch shall certify to it that the said managing board have secured other donations to said trust fund, which donations, together with the trust fund, aggregate fifty thousand dollars ($50,000), such certificate shall be full authority for delivering the accumulations of said trust fund to said managing board and closing said trust.

"Fourth. It is my will and I hereby order and direct the said managing board when it shall come into possession of the said trust fund to use the same towards a shelter for orphan and homeless Jewish children in such manner as to said managing board seems best from time to time. It is my desire that said trust fund shall be safeguarded and protected as far as may be so as to be a perpetual benefaction to the unfortunate class which it is my desire to hereby benefit.

"I hereby direct the said trust company to report annually to the Temple de Hirsch the financial condition of said trust fund, to aid and guide the said Temple de Hirsch in gathering such additional funds as may make the said trust fund operative.

"If at any time it should seem best to utilize my four acres of land at Orchard Beach as a site for such home or shelter the same may be so used, or if it should be deemed best to sell the same and use the funds therefor, I direct that this be done; all this, however, I leave to the good judgment of my said trustee."

The appellants' petition is directed specifically to the paragraphs of the will quoted, and prays that the attempted gift of the residue of the decedent's estate may be declared void, and that the executor be ordered to administer upon and distribute the residue as though the decedent had died intestate, upon the theory that the quoted portion of said will is void under the rule against perpetuities.

It may be admitted in the beginning, as is said by the appellants, quoting from Gray, The Rule Against Perpetuities (3d ed.), p. VII:

"The doctrines derived from the feudal law, which so closely limited the creation and transfer of future estates, have passed or are fast passing away. Any reasons for their existence have gone, and under the joint action of the legislatures and courts they have themselves almost disappeared. Of all that forest of learning there remains here and there only a stump over which an unlucky testator may stumble. But the rule against perpetuities is in full vigor; where the legislature has interfered, it has been to increase its stringency. Indeed, the rule is substantially, at the present day, *the* law of future interests."

Professor Gray, in his admirable work, The Rule Against Perpetuities (3d ed.), § 591, says:

"But the rule against perpetuities is not directed at preventing the alienation of present interests, but against the creation of remote future interests."

And adds, in a foot note, that the rule should be known as the rule against remoteness.

The appellants seem to contend that the will, by its terms, creates one trust in the Seattle Trust Company for purposes of accumulation, and another and subsequent trust to take effect only upon the termination of the first trust, in the final managing board, to be selected under paragraph third of the quoted provisions of the will, the last trust being for the purpose of erecting and maintaining a home for orphans and homeless Jewish children.

Let us examine the language in the will to discover, if we may, the testator's intention. In paragraph first, after the usual language to constitute a bequest and describe the property, and the method of handling and disposing of it, the testator says:

". . . all in trust, however, to and for the following uses and purposes, that is to say:

"Second. It is my will and I hereby order, direct and empower my said trustee to invest said fund in interest bearing securities, and the trust fund hereby created shall be known as the Bonham Galland Trust; to be used for the establishment of a shelter for orphans and homeless Jewish children, . . ."

And in paragraph third, after providing for the appointment of five members of the Temple de Hirsch:

". . . as a managing board to have charge of said trust fund when the same shall by its own accumulations or by other contributions thereto, aggregate, inclusive of the four acres of land that I now own at Orchard Beach, the sum of fifty thousand dollars ($50,000), and thereupon the said trust company shall deliver to said managing board all of said trust fund, less the proper and legitimate fees for administering the same, and upon such delivery said trust shall cease. . . ."

It will be seen that the will does not in any manner provide that this trust fund shall or may be used for anything but the particular charity specified, and does

not appear to recognize any possible contingency or event the happening of which could prevent the use of the fund as intended. There is no other residuary clause or provision by which in any event the fund, or any part thereof, may pass to others at any time, near or remote. The words "said trust shall cease," quoted from paragraph third, may, on the first reading, be misleading. But if they were intended to mean anything more than that the duties of the Seattle Trust Company shall cease upon turning over the fund to the permanent board, then they would be wholly inconsistent with the remainder of the will. They cannot mean that the Bonham Galland Trust, which has thereinbefore been established with such particularity, shall cease, because the contrary intention clearly appears from the whole instrument. The Bonham Galland Trust is to continue and remain in existence so long as any fund remains to be administered in the interests of orphans and homeless Jewish children, as in the will provided. Reading paragraphs first, second, third, and fourth of the will as a whole, it seems to us clear that the testator intended that all of his estate, except the part theretofore disposed of, should constitute but one fund, devoted to but one purpose, viz.: the proposed charity, for, "If the court, however, can see an intention to make an unconditional gift to charity (and the court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the Rule Against Perpetuities." Gray, The Rule Against Perpetuities (3d ed.), § 607.

The question, then, to be determined is whether the testator's gift in this case was an unconditional gift to charity which vested immediately in the charity to be benefited, and is, therefore, without the scope of the rule against perpetuities.

"The rule only requires that interests shall vest within certain limits. A future interest is vested if it is ready to turn into a present estate of enjoyment whenever the preceding estates determine. *A fortiori* interests which are being presently enjoyed are vested. No present interests are therefore within the scope of the rule." 30 Cyc. 1471.

"The rule does not require that future interests should become present estates of enjoyment within the limits. It is satisfied if the future interests must vest within the limits. Consequently, if an interest is vested at its creation, it is not subject to the rule at all; this is true, even though such interest may not become a present estate of enjoyment until long beyond the limits of the rule." 30 Cyc. 1482.

The industry of counsel has brought to the attention of the court many authorities treating upon this subject, only a few of which it will be necessary to notice.

In *Seaver v. Fitzgerald*, 141 Mass. 401, 6 N. E. 73, the testator by his will provided:

"Item 12th. I give, bequeath, and devise all the remainder of my property, real, personal, and mixed, of which I shall die seised and possessed, or to which I shall be entitled to at the time of my decease, to my said executors, Patrick Sweeney and Thomas Conway, to hold in trust, to use so much of the income thereof as shall be needed to give my daughter, Annie J. Rafferty, a good and suitable support so long as she shall live; also if she shall ever have a child or children, my said executors shall support them in a proper manner from said income or property during the life of each and all; the balance of said income and the property after the death of my said child, and her child or children (if any), shall all be paid over by my said executors, for the sole use and benefit of the Augustinian Society of Lawrence, a body corporate duly established by the laws of this Commonwealth, in the year of our Lord eighteen hundred and seventy, to said corporation forever."

And the court said:

"In all the cases cited by the demandant's counsel, the gift over was to persons who might not be ascertainable with certainty within the allowed time. But the present case is not of that class. There was no contingency or uncertainty as to who should finally take. The estate or interest vested in the Augustinian Society, a body corporate, absolutely and at once, upon the testator's death, subject to the preceding life estates. All that is required by the rules against perpetuities is that the estate or interest shall vest within the prescribed period. The right of possession may be postponed longer."

In *Philadelphia v. Heirs of Stephen Girard,* 45 Pa. St. 9, 84 Am. Dec. 470, § 20 of the will constituting a trust is set up in full in the statement of the case, and presents conditions very similar to those in the case at bar. The court says:

"It is a devise of all the residue of his real and personal estate to the city of Philadelphia, an existing corporation, in trust, as his 'primary object' to construct, furnish, constitute, and maintain the institution now known as the Girard College, and then for certain municipal purposes, not necessary to be now specified. It is therefore a present gift for a present and lawful purpose, and consequently a vested and executed trust for that purpose."

Further on the court says:

"The law allows the vesting of an estate or interest, or the power of alienation, to be postponed, and the accumulation of its increase to be made previous to vesting, for the period of lives in being, and twenty-one years and nine months thereafter, and all restraints upon the vesting, that may suspend it beyond that period, are treated as perpetual restraints, and therefore as void, and consequently the estates or interests dependent on them are void; and nothing is denounced by the law as a perpetuity that does not transgress this rule. And equity follows this rule by

way of analogy, in dealing with executory trusts, and those trusts which transgress the rule it calls transgressive trusts, being in equity the substantial equivalent of what in law are called perpetuities: Fearne on Rem. 538, n.; 6 Cruise 466, 478; 4 Ves. Jr. 312, 337, 341; 9 Id. 132, 134; 2 Ves. & B. 61; 2 Swanst. 428; 2 Mylne & K. 654; Lewis on Perp. ch. 12.

"This is, in fact, the rule that is appealed to for setting aside this trust, and yet, rightly understood, it really sets aside all the arguments that were made against the validity of the trust, by showing that whatever restraints are put upon the alienation of the property, they do not transgress the rule, because they have no relation to the vesting of the estate or interest."

In *Duggan v. Slocum,* 92 Fed. 806, the testator left all of the residue of his estate in trust for the following purposes: One-half to be used for the purpose of establishing and maintaining a library and reading room in connection with St. Patrick's parish, and one-half for the purpose of establishing and maintaining a Roman Catholic protectory for boys; "it being my will that the personal estate and the rents accruing from any real estate of which I may die possessed be invested in safe securities for a term of ten years or more, at the discretion of my said executors." The court says:

"We shall only look at the vital questions arising under the fourth clause of the will, which are whether its provisions are void either because the beneficial enjoyment of the charities may be postponed for a period which is styled 'remoteness,' or because the objects of the charities and the beneficiaries are too indefinitely stated. By the residuary clause an immediate and unconditional gift of the estate is made to trustees, to be used by them in the establishment and maintenance of two distinct charities. Their title is burdened with no conditions. They are not to hold it until some other person appears, who may wish to establish these charities, or until a corporation is

formed, or until a certain amount of money is contributed, but the gift is absolute, and they can have the permanent control of the charities, subject to the provision that the income is to accumulate for at least 10 years, 'or more', at their discretion. This discretionary provision in regard to accumulation makes the gift obnoxious to criticism in the mind of the complainants. 'A perpetuity is a limitation of property which renders it inalienable beyond the period allowed by law. That period is a life or lives in being and twenty-one years more, with a fraction of a year added for the time of gestation in cases of posthumous birth.' *Ould v. Washington Hospital*, 95 U. S. 303. A secondary meaning is 'an interest which will not vest till a remote period' (Gray, Perp. § 140); and the complainants assert that the beneficial interest in this fund may not be enjoyed by the people of Waterbury, or the boys of the diocese of Hartford, for a remote period, if the trustees should neglect or decline to establish the charities; and that, therefore, the entire gift is void. It is true that the time before a gift can take beneficial effect may be so remote as to avoid the gift. 'There may be such an interval of time possible between the gift and the consummation of the use as will be fatal to the former. The rule of perpetuity applies to trust as well as to legal estates.' *Ould v. Hospital, supra.* The validity of this class of bequests depends upon the law of the state of the testator; but the law of Connecticut, as will hereafter be seen, is that of England and of the states of this country generally, except where special statutes have created a peculiar system, and by this general law 'trusts for public charitable purposes are upheld under circumstances under which private trusts would fail.' *Russell v. Allen*, 107 U. S. 163, 2 Sup. Ct. 327; *Woodruff v. Marsh*, 63 Conn. 125, 20 Atl. 846. Charities are favored; the 'stern rule against perpetuities is relaxed for their benefit'; and where the gift is made directly in trust for a charity, although the beneficial effect of the gift may be postponed for a longer period than the strict rule against perpetuities permits, provided there is no gift meanwhile to or for the benefit

of a private corporation or person, courts of equity will declare the gift valid, if they can see a reasonable prospect of the consummation of the charitable purpose.''

In *Russell v. Allen,* 107 U. S. 163, speaking of trusts for charitable purposes, the court says:

''Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be so construed as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed. They may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity. If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead.''

In *Odell v. Odell,* 10 Allen (Mass.) 1, the court had under consideration a bequest of $100 annually for the period of fifty years, to be safely invested by the trustees, the interest to be added to the principal semiannually, and at the expiration of fifty years the sum accumulated to be appropriated by a society of ladies from various religious organizations, to provide and sustain a home for respectable, destitute, aged, native-born American men and women. The court, after reviewing the authorities at length, says:

''In this state of the authorities, and in the absence of any legislation upon the subject, we are not prepared to say that accumulation for a charitable purpose can in no case be allowed for a fixed period of

more than twenty-one years, or for a contingent period beyond a life or lives in being and twenty-one years afterward.''

And again:

''It was contended for the heirs at law that no title, legal or equitable, would vest in the charity until the expiration of the fifty years.  But we think such is not the true construction of the will.  The clause relied on is as follows:  'At the expiration of fifty years the sum which shall have accumulated shall be appropriated by a society of ladies from all the Protestant religious societies in Salem to provide and sustain a home for respectable destitute aged native-born American men and women.'  Here are no words of transfer of title, and the ladies mentioned are not a corporation capable of taking the legal estate.  The more reasonable interpretation is that the testator intended to continue the title of the fund in the hands of the trustees to whom he gave it in the first instance,  .  .  .''

Hence it was held that the trust had vested.

In *Franklin v. Hastings,* 253 Ill. 46, 97 N. E. 265, Ann. Cas. 1913a 135, the court had under consideration a similar trust, with conditions which were thought to bring it within the rule against perpetuities.  The court says:

''The language of the bequest here is a plain direction to the executor to hold and apply $10,000 for the purpose of aiding in the establishment and support of a public library in Lexington, and if the clause had stopped there, perhaps no question would have arisen in regard to the gift.  The intention to give to the library is sufficiently manifested, but it is claimed that the subsequent provisions attach conditions to the gift which are precedent to its taking effect, and violate the rule against perpetuities.  These, however, refer only to the time and manner of the enjoyment of the gift. The testatrix might have appointed trustees to carry her wishes into effect and provided for their succession in office, but she preferred a corporation author-

ized by law. She required the name of Smith to be used as a part of the name of the library and the provision of a fund, the minimum of which she did not fix, though she stated it need not exceed $5,000. These conditions would, no doubt, in a bequest to an individual be regarded as conditions precedent to the vesting of the equitable interest and obnoxious to the rule against perpetuities. Not so in a bequest to charity. The statute of Elizabeth in regard to charitable uses (43 Eliz. ch. 4) is in force in this state, and its effect is to exclude conveyances and devises to such uses from the operation of the rule against perpetuities. *Heuser v. Harris, supra* [42 Ill. 425]; *Crerar v. Williams,* 145 Ill. 625. Though a private trust cannot be created in perpetuity, that rule has no application to a gift for charitable uses.

"It is insisted, however, that there is no direct gift, but only an authority to the executor to pay and convey to the proposed library association when the conditions as to incorporation and the provision of a fund have been complied with; and that where the gift itself is thus conditional, it is subject to the same rules and principles as any other estate, and if in violation of the rule against perpetuities must fail. This is not a correct view of the gift. Neither the organization of the corporation nor the provision of a fund is a condition precedent to the vesting of the gift. The gift itself is not conditional, but is an absolute and immediate devotion of the sum of $10,000 to the purposes of the will in connection with the library."

In *Brigham v. Peter Bent Brigham Hospital,* 134 Fed. 513, where a somewhat similar provision in the will was under consideration, the court says:

"Therefore we have here a perfect trust for the founding of a hospital for the care of the sick, to be effectuated by a conveyance to a proper corporation to be organized as the will provides. This, when made, accomplishes the trust. Thus, the general purpose of the testator was continuous from his death. Therefore there is no practical difficulty in the way of holding that the trust vested at the death of the testator."

Perhaps the most nearly parallel case which has been brought to our attention is that of *Ingraham v. Ingraham,* 169 Ill. 432, 48 N. E. 561, in which case the language used by the testator is:

· "I give, devise and bequeath all the rest, residue, and remainder of my estate, in whatsoever the same may consist and wherever situate, to my executors and trustees hereinafter named, in trust for the uses and purposes as follows: Said trustees shall retain said fund in their hands, and manage, control and invest the same until it shall have sufficiently accumulated for the purpose, paying therefrom the expenses of managing the trusts hereby created and the provision for my wife's household and personal expenses, as provided in the twelfth clause hereof, and then shall cause the same to be used for the erection and maintenance of a hospital for the treatment of the sick and diseased, to be located in the city of Chicago."

Then follow provisions with reference to the selection of the location, etc., and:

"It is my desire that the fund hereby created shall at least equal one hundred thousand dollars ($100,000) before any of it shall be expended for the purpose of the hospital in this clause of my will mentioned."

The court says, after discussing the authorities at length:

"In the case at bar the testator directs, in the fourteenth paragraph of his will, that the trustees shall retain the fund in their hands, and manage, control, and invest it, until it shall have sufficiently accumulated for the purpose, subject to the expenses of the trust and the household and personal expenses of his wife, and then shall cause the same to be used for the erection and maintenance of a hospital for the treatment of the sick and diseased, to be located in the city of Chicago. In a subsequent sentence of the same paragraph, the testator states it to be his desire that the fund thereby created shall at least equal $100,000 before any of it shall be expended for the purpose of

the hospital in that clause or paragraph mentioned. Counsel for appellant say, that by these provisions the time when the accumulation of the fund reaches $100,-000 is fixed as the time when the charitable estate is to vest, and that thereby a remote condition precedent is imposed upon the operation of the charitable trust: A gift of personal estate at a specified future time or upon the happening of a certain contingency will not vest until the time specified has arrived or until the contingency has happened. (*McCartney v. Osburn,* 118 Ill. 403). Applying this rule, counsel reach the conclusion that, in the present case, no gift is made to the object to be benefited, aside from the direction of the trustees to pay over or use the property in question for the beneficiary, and that therefore the present gift to charity is not a present, immediate and vested estate. But it is well settled that, where a gift is general, and there is simply a direction that it be paid or applied at a specified time or upon the happening of a certain contingency, it will vest at the testator's death, and the payment or application only will be postponed. (*Scofield v. Olcott,* 120 Ill. 362; *McCartney v. Osburn, supra.*) In determining whether the gift is immediate, or is to be postponed until the time of payment or application arrives, the language of the testator will be liberally construed in favor of a vested interest, and all the language of the will, as well as that supposed to embody the direction to pay at a certain future time, will be considered in arriving at a proper construction. As has already been stated, a court will be 'keen-sighted' to discover an intention to make an unconditional and immediate gift to a charity. 'The tendency of the courts being to construe limitations as vested, the arrival of the period fixed for or needed for the accumulation will not be deemed a condition precedent to the gift of the accumulated fund, unless the language employed requires such a construction.' (Gray, on Rule Against Perp. sec. 673). Where two modes of construction are possible, by one of which a legacy or devise to charity would be made an illegal perpetuity, and by the other of which such a legacy or devise would be valid and operative, the

latter mode of construction will be adopted.    (*Ibid.*, sec. 633; *Woodruff v. Marsh,* 63 Conn. 125.)

"An application of these principles to the interpretation of clause 14 leads us to the conclusion, that there was here an immediate gift to charity at the death of the testator, from which date the will speaks."

Having in mind that the court should be very keen-sighted to discover an intention on the part of the testator to make an unconditional gift to charity, and giving to the language used by the testator its natural and plain meaning, we are impelled to hold that the testator, by his will, established a trust fund to be known as the Bonham Galland Trust, which fund vested immediately upon the death of the testator, in and for the charitable uses designated by him in his will, and having so vested, the rule against perpetuities does not apply. It makes no difference how many successive trustees may be provided for to administer such fund, or that different trustees may have different duties. The trust is one and indivisible, and vested upon the death of the testator.

The judgment of the court below was right and must be affirmed.

MAIN, C. J., FULLERTON, MITCHELL, and PARKER, JJ., concur.