210 A.2d 306 (1965)
Elizabeth Ann ASCHE, Frederic B. Asche, III, Edward C. Asche, Franz M. Asche, Elizabeth V. Asche and Asche Ackerman, Appellants,
v.
Grace Vale ASCHE et al., Appellees.
Supreme Court of Delaware.
April 1, 1965.
*307 E. Dickinson Griffenberg, Jr., of Killoran & VanBrunt, Wilmington, pro se as Guardian ad litem for certain appellants.
Andrew B. Kirkpatrick, Jr., and Richard L. Sutton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Andrew B. Kirkpatrick, Jr., Guardian ad litem for certain appellants.
Richard J. Abrams, of Richards, Layton & Finger, Wilmington, for the Executors of the Estate of Elizabeth W. Vale.
Thomas Herlihy, III, Deputy Atty. Gen.
Blaine T. Phillips, of Berl, Potter & Anderson, Wilmington, for certain appellees.
WOLCOTT, Chief Justice, CAREY, Justice, and CHRISTIE, Judge, sitting.
CAREY, Justice (for the majority of the Court).
This is an appeal from a decision of the Court of Chancery for New Castle County upon a bill for instructions filed by certain Trustees appointed in a Will.
Ruby R. Vale, an attorney, died on January 2, 1961, leaving a last Will and Testament, dated November 30, 1960, with a codicil dated December 21, 1960. His wife survived him but died on August 28th, 1961. At the time of the testator's death one child, Grace Vale Asche, was living. There were also living three grandchildren and six great grandchildren, all still alive. By his will, after making certain bequests to individuals, the testator divided his residuary estate into a marital and a non-marital trust. The marital trust is of no concern in the case now before us.
The provisions of the will concerning the non-marital trust are complicated and the Trustees filed a declaratory judgment action in the Court of Chancery seeking instructions as to the meaning and validity of certain provisions. The specific questions which the Court was asked to determine are set forth later herein. From the decision and order of the Court some of the parties have filed this appeal. That decision was based upon applications of all parties for summary judgment. No evidence of any nature was before the Court other than the will and codicil, a statement of the identity of the survivors, some information concerning the size of the trust estate, and a copy of the grandson's renunciation of any rights under clause Fifth of the will. We find it necessary to quote at length several provisions of the will.
In the Third clause of the will, after giving unto his trustees his residuary estate, the testator included a paragraph designated "II" which was intended to constitute a duration clause for the trust, the material language of which is as follows:
"to hold (b) the Other of said separate Estate Trusts, after deducting therefrom every Federal and State estate or other tax assessed against either or both of said separate Estate Trusts, in accordance with and subject to the terms and conditions of subsequent clause Fifth of this last Will and Testament, for and during the successive lives of: (1) my daughter, GRACE VALE ASCHE, wife of Frederic B. Asche; of (2) all my grandchildren, FREDERIC B. ASCHE, JR., VALE ASCHE ACKERMAN, wife of Marion S. Ackerman, III, and BETTYANNE ASCHE and of (3) the respective lawful issue of every of my three grandchildren living at my death, or (4) during the period of time valid under the law of the State of Delaware for lawful issue born after my death; or in and under the alternative conditions of said clause Fifth, (5) for and during the successive respective lives, or lawful periods of time, of my grandson, FREDERIC B. ASCHE, JR., and his lawful children and their lawful issue as therein provided". (Emphasis in original).
*308 Paragraph III C (b) contains certain directions for the disposal of income, as follows:
"(b) To accumulate, invest and reinvest * * * the whole INCOME received from the other separate Estate Trust, until there has been accumulated by the Trustees the sum of Two Million ($2,000,000.00) Dollars, as artificial principal, at which time the said Trustees shall irrevocably assign, transfer and pay over the said sum of Two Million Dollars unto the `RUBY R. VALE FOUNDATION' for educational uses and purposes, which perpetual foundation shall be caused to be set up and established by my Trustees solely for said purposes, with full power herein given so to do. After the accumulation of the said Two Million Dollars as artificial principal, to be used for education uses and purposes as herein provided, the Trustees shall pay over and distribute * * * in quarterly installments as follows: UNDER AND SUBJECT to the terms and conditions of subsequent alternative clause Fifth of this Will, one-fourth part of the said net income unto (1) my daughter GRACE VALE ASCHE, for and during her life; and (2) a one-fourth part of said income in equal per capita shares unto 1. each and every of my grandchildren, and 2. his or her lawful issue, or in the alternative, during the respective lives or lawful periods of time of my grandson, FREDERIC B. ASCHE, Jr., and his lawful children and their lawful issue as herein set forth; PROVIDED, however, the per capita share of each grandchild and of his or her lawful issue living at my death shall be paid to each for and during their respective lives, but the per capita share of any issue of any grandchild born after my death shall be paid to such issue only for the period of fifteen years, when the PRINCIPAL on which such after-born issue received the income shall be paid over absolutely to such issue, who shall take equally between or among them the share the deceased parent would have taken if then living." (Emphasis in original).
Paragraph III disposes of the remainder in the following language:
"E. At and upon the death of (1) my daughter, of (2) my grandchildren and of (3) their lawful issue living at my death as they successively occur, and (4) fifteen years after the birth of any lawful issue of any grandchild not living at my death, that part of the PRINCIPAL of one separate Estate Trust or of the whole or my Adjusted Gross Estate upon which the deceased daughter, grandchild or his or her lawful issue received the income, shall go absolutely to and be equally distributed between or among the then surviving lawful issue respectively of my daughter, grandchild and his or her lawful issue, such issue taking per stirpes and not per capita; or in the alternative, to my said grandson, FREDERIC B. ASCHE, JR., and his lawful children and their lawful issue as herein provided in subsequent clause Fifth of this Will."
The Fourth clause of the Will lists a number of trusts which the testator had previously created and concludes with the following two paragraphs:
"The above facts are essential: (a) to explain the omission from my will of all gifts to charities or to relatives; and (1) in order to prevent the duplication of taxes on successive life estates to my daughter and to her children and grandchildren, and (2) because of the disproportionate fair market value of the principal of some of the above Estate Trusts wherein my daughter is sole or survivor beneficiary for life with remainder over to her surviving issue; and also (b) will make clear why she, every of her children and her grandchildren have been given *309 only life estates or for the periods of time lawful under existing law.
"Since my wish is for equality among all of the children of my daughter and their lawful issue, the disparity between the respective beneficial interests of my grandson and my granddaughters under the above Trust Estates, (c) will make necessary and I Now Will and Direct the Trustees, under and subject to the succeeding alternative clause Fifth of this Will, to add to each of the respective shares, under this Will, of my two granddaughters or to the per stirpes and not per capita share of the lawful issue of any deceased granddaughter, such sum as will make each of their shares equal to the total amounts of principal and artificial principal which my grandson, FREDERIC B. ASCHE, JR., and his lawful issue shall have received as distributees under the two (2) Declarations of Trust dated January 11, 1930, specifically designated in the above clause Fourth as (1) and (2)."
The Fifth clause of the will contains an alternative disposition of income and remainder in the following language:
"Fifth: In natural sequence the probating of this last Will and Testament will precede that of my son-in-law, FREDERIC B. ASCHE; my one concern is that the total reasonable and fair value of the whole share of my grandson, FREDERIC B. ASCHE, JR., and/or his lawful issue at and upon his death, in the accumulated property of his father, under his will and his gifts during life, shall be equal to or shall not be less in total fair worth or reasonable value of the respective shares therein of either of his two sisters and/or their respective lawful issue. Solely in order to equalize the fair market value of the shares of all three grandchildren in the total estates of both their father and their maternal grandfather, and not in any way to affect the definitive action of my said son-in-law, it is my will (a) if said respective shares of all my three grandchildren and/or their lawful issue, are not in fair market value share and share alike approximately equal or (b) if no satisfactory legal agreement to equalize said shares is executed by competent parties in interest, or (c) if no decree of court is entered in purpose and effect transferring or giving to my grandson, FREDERIC B. ASCHE, JR., and/or his lawful issue, a share in all said property of his father approximately equal in fair market value to the whole of that by him transferred in life by gifts or after his death by his will devised or bequeathed to either of my granddaughters, and/or their respective lawful issue, then and on the happening of any one or more of said three events I NOW DECLARE, DIRECT AND ORDER:
"(1) The Trustees herein shall ignore all and every preceding clause of this my last Will and Testament, which shall be void and without legal effect so far as said Will authorizes and directs them to make present and immediate distribution of any part of share of my estate to either of my granddaughters and/or their lawful issue. (2) In lieu and instead, the Trustees shall make no payment or distribution of either income or principal of my estate under this Will to either of my granddaughters, or their lawful issue, until and after my said grandson, FREDERIC B. ASCHE, JR., and/or his children, or their lawful issue, shall have received or shall have the legal right to receive a cash total sum of net income and of real or personal property from the principal of the whole estate of his father, Frederic B. Asche, securities, the market or fair value of which approximately shall equal the whole share or part of all the real and personal property awarded or bequeathed by him at his death to either *310 of his said daughters and/or their lawful issue, by or through her father, Frederic B. Asche, as gifts in life or otherwise under his trust deed or deeds and/or as devises or legacies under his last Will and Testament.
"(3) In explicit summary, my two granddaughters, or their issue, shall share in the distribution of either income or principal of my estate as herein provided, only if and after my said grandson, or his lawful issue, shall take or shall have been decreed the legal right to receive, a share in all the real and personal property owned and possessed by his father at his death which is approximately equal to the share therein of either of his sisters or their lawful issue.
"(4) In the absence of any legal agreement or decree of court, as above provided, and because of said inequality among said grandchildren of sharing in the property and estate of their father, the Trustees shall pay and distribute income from my said estate only and solely to my said daughter and to my grandson, Frederic B. Asche, Jr., and the said principal to his lawful issue, as herein provided, and shall continue to invest, reinvest and accumulate as artificial principal all other income of my estate by them received but not distributed until and after the will of his father, Frederic B. Asche, shall have been probated. If my said grandson shall have received or shall have the legal right to take a share or part in all of the property of his father equal to the share of either of said granddaughters, then this my Last Will and Testament as a whole shall be in full legal force and effect; and the Trustees shall pay and distribute the income accumulated as artificial principal unto my granddaughters and their lawful issue as herein provided. But if my said grandson should not share equally with his said sisters in said property of his father, then all income so accumulated as artificial principal and future income on and principal of my estate shall be distributed by the Trustees to my grandson and his lawful issue as herein provided, notwithstanding anything herein contained to the contrary." (Emphasis in original)
The complaint filed in the Court below by the Trustees prayed for a decree directing the administration and distribution of the trust property and specific answers to the following questions:
"1. Are the provisions of Items Third II and III, or either of them, with respect to the duration of and the vesting of interests within the non-marital trust valid or void because in violation of the rule against perpetuities or otherwise:
"II. If such provisions are valid, is the Item Third III C bequest for educational purposes a valid charitable bequest or void because in violation of the rule against perpetuities or an unreasonable accumulation?
"III. If such bequest is invalid, does the bequest for educational purposes fail in its entirety and does the whole non-marital trust fail? If not, what is the resultant effect of any such invalidity upon the operation of the non-marital trust and the charitable and non-charitable interests therein provided for?"
After reviewing briefs and hearing arguments from counsel for the executors, the trustees, executors of the estate of Elizabeth W. Vale, the various life beneficiaries, and guardians ad litem for the minor living beneficiaries and for the unborn issue, the Vice-Chancellor held that the direction for accumulation constituted a present vested gift to charity, with postponement of enjoyment, and that the expected period of accumulation is not unreasonable. He also held that this period could exceed the time *311 permitted by the rule against perpetuities; that all subsequent gifts might not, therefore, vest within the period of that rule and were accordingly void; that after the accumulation and payment of two million dollars to the charitable foundation, the trust must cease and all remaining assets to be distributed under the intestate law.
Before us, the contentions made by the various appellants are, in summary: (1) the gift to the charity is contingent and may not vest within the period of the rule against perpetuities and is accordingly void; (2) regardless of whether the charitable gift is valid or invalid, the subsequent gifts are vested or must vest within the period of the rule and are accordingly valid.
In approaching the problem, we have in mind certain basic principles applicable to all will construction cases. We must try to determine the testator's intent from the language of the will as a whole. If the intent so found creates a gift which violates the rule against perpetuities, the gift must fail. The Court will, however, prefer that construction which does not offend the rule, if such a construction is reasonably justified by the language used. The Court will also prefer a construction that the gift is vested rather than contingent. Cann v. Van Sant, 24 Del.Ch. 300, 11 A.2d 388, Affd. Frame v. Cann, 24 Del. Ch. 353, 16 A.2d 248; Myers v. Bank of Delaware, et al., 38 Del.Ch. 228, 149 A.2d 745, 79 A.L.R.2d 1433; Girard Trust Co. v. Rector, Wardens and Vestrymen, etc., 30 Del.Ch. 1, 52 A.2d 591.
What was the testator's intent with respect to the charitable gift? The Court below was of the opinion that he intended the trust to continue at least until the income accumulations amounted to two million dollars, when they are to be paid over to the perpetual foundation; in other words, he felt that this gift to charity in its full amount was the testator's paramount wish to which every succeeding object or interest is subordinated. It is true that this gift is created in positive terms, which state, "after the accumulation of the said two million dollars as artificial principal" * * * the Trustees shall pay over the income and ultimately the principal of the trust to the other beneficiaries. We must, however, read the will as a whole to find the correct intent. Paragraph IIb purports to define the duration of the trust in positive language. Subject to clause Fifth, the trust is to terminate at the expiration of time valid under the law of the State of Delaware "for lawful issue born after my death". Somewhat similar language is used for the duration period in the event clause Fifth comes into play. We think the testator was here attempting to set a period of duration within the rule against perpetuities; while he wanted to benefit his descendants as long as possible, he was eager to do so without violating that rule. In other words, Mr. Vale was trying to use the longest period permissible under that rule as the yardstick for the duration of this trust. Cf. Stellings v. Autry, 257 N.C. 303, 126 S.E.2d 140; Fitchie v. Brown, 211 U.S. 321, 29 S.Ct. 106, 53 L.Ed. 202. We do not say that he was necessarily successful in his attempt to keep within the rule as a matter of law; all we mean is that such was his apparent intent.
If we assume the validity of the duration clause, we see that a conflict could arise between it and the charitable provision; this would occur if the trust should terminate under paragraph IIB before the two million dollars shall have been completely accumulated. The likelihood of this situation actually arising is extremely remote, for we are told that at the present rate of return the accumulation will be completed in about seventeen years. Moreover, some of the living beneficiaries are very young. Nevertheless, the possibility exists and, should it occur, one part of the will must give way to the other part; that is, either the duration of the trust must be extended until the two million dollars is accumulated, or the accumulation must stop *312 short of that amount. Under the view of the Vice-Chancellor, the first alternative would prevail but, under our view, the duration clause would take precedence. To say that Mr. Vale intended that the duration be extended in order to bring the accumulations up to the exact sum of two million dollars is to say that he intended to stretch the trust further than the rule permits, notwithstanding his positive language showing that he intended to stay within that rule.
Several considerations support our view of Mr. Vale's intent. He did not designate a specific use to be made of the charitable gift, such as the erection of a building which would require a minimum or certain number of dollars, nor did he give any other indication of a reason why the figure had to be exactly two million. Apparently this figure was simply his idea of the amount appropriate to form the capital basis for the foundation he wanted to create. On the other hand, his disposition of subsequent income and all the capital of his trust among his descendants was a matter he discussed in great detail in the will, devoting several pages to that purpose. We may assume he was familiar with his property and that he realized the great probability of the accumulations reaching that figure long before the duration clause would terminate the trust. Although the charitable gift is given preference over the family donations, we do not think this preference was intended to go to the extent of upsetting the rest of his testamentary scheme. We think, in short, that he intended a gift of two million dollars to the charity if that amount should be accumulated prior to the trust termination as defined by him, otherwise the charitable gift should be reduced to the amount then accumulated.
Under the foregoing interpretation of the will, it follows that the accumulation is not a condition precedent to the vesting of the charitable gift. If we apply the test adopted by Restatement of Property § 370, the gift is not contingent because it is not "subject to an unfulfilled condition precedent". If we apply the test which had generally been followed in prior Delaware cases, the same result is reached. That test is the one set forth in Conwell's Admr. v. Heavilo's Admr., 5 Harr. 296, in which Chief Justice Booth said:
"When a legacy is directed to be paid at a future time, or on a future event, it is vested or contingent, according to the intent and meaning of the testator, as expressed in his will. If the time or event is annexed to the payment of the legacy, it is vested; if to the substance or gift of the legacy, it is contingent; because such appears to be the intention of the testator. Therefore, if a legacy be given to a person, payable, or to be paid, at, or when he shall attain the age of twenty-one years; or at or upon any other definite period or event; the legacy becomes vested immediately on the testator's death; and is transmissible to the executors or administrators of the legatee, although he dies before the time of payment. But if the words `payable' or `to be paid' are omitted, and the legacy is given at twenty-one; or at or upon any other future period or event; the interest is contingent, and depends for its vesting on the legatee being alive at the period or event specified."
In the present case, it is our opinion that the "time or event is annexed to the payment of the legacy rather than to the substance or gift". The will orders the trustees to "assign, transfer and pay over" all the accumulations when the designated time arrives. This gift is therefore vested but is subject to be divested pro tanto if the trust duration should ultimately be found to be valid and that period should end before the two million dollars is accumulated. If the trust duration should be found invalid, it may be that the vesting would be absolute under the theory, set forth in VI Amer. Law of Prop. § 24.47, that if the *313 divesting interest is void, the interest subject to divesting becomes absolute.
In our opinion, vesting is not prevented by the fact that the will does not require the perpetual foundation to be established until some future time; the real gift is to those who will benefit from the application of the gift to educational purposes and the foundation itself will simply be the agency by which the gift is to be administered. Even had Mr. Vale failed to designate such an agency, equity would not have allowed the gift to fail but would have appointed a trustee to carry it into effect. We also think that the immediate vesting of the gift is not prevented by the fact that it consists solely of accumulated income. Being vested, the gift does not violate the rule against perpetuities. We of course concur in the Vice-Chancellor's view that the period of accumulations is not unreasonable.
In support of the foregoing holdings, we cite the following authorities: VI American Law of Property, § 24.42 etc.; Restatement of Property, § 442; Gray, Rule against Perpetuities, § 673; Girard Trust Co. v. Rector Wardens and Vestrymen, supra; Wilmington Trust Co. v. Bronxville Trust Co., 24 Del.Ch. 64, 5 A.2d 248; Odell v. Odell, 10 Allen 1, 92 Mass. 1; In re Galland's Estate, 103 Wash. 106, 173 P. 740; Perkins v. Citizens & Southern Nat. Bank, 190 Ga. 29, 8 S.E.2d 28; Equitable Trust Co. v. Ward, 29 Del.Ch. 206, 48 A.2d 519; Simes & Smith on Future Interests, § 1284; IV Scott on Trusts § 401.9.
Because of the Vice-Chancellor's belief that the charitable gift is vested subject to no defeasance and that the accumulations might require longer than the permissible period, he held that all succeeding interests violated the rule, presumably upon the theory that they are contingent. Of course, under our modification of his holding, this result is not necessarily correct. We venture to suggest that the life estate to the daughter is either vested or must vest, if at all, within the period of the rule. Beyond this suggestion, however, we express no views upon the meaning or validity of those testamentary provisions. Our ruling makes necessary a determination as to which of the succeeding gifts, if any violate the rule. This determination involves many problems which have not been ruled upon in the Court below. Even assuming that we have the power to decide these matters initially, we prefer in this case to have the benefit of the Vice-Chancellor's views. For this reason, the record will be remanded with directions to amend the judgment in accordance with the opinion herein expressed as to the charitable gift and to determine the remaining questions after such further proceedings as may be necessary.
WOLCOTT, Chief Justice (dissenting).
I do not concur in the conclusion of the majority that Paragraph II of the Will, the so-called "duration clause", acts as a time limitation upon the provisions of Paragraph III C directing the accumulation of income to provide "artificial capital" for a charitable trust. I set forth briefly the reasons for my disagreement with the majority in this respect.
The majority has held that the gift to the charity under Paragraph III C of the Will is a vested gift. With this holding I agree because the gift is an immediate gift with enjoyment of the proceeds merely postponed to a later date. This conclusion flows from the obvious intent of Paragraph III C to provide immediately on the death of the testator the inception of a fund to be used ultimately for charitable purposes. The gift to charity is not, therefore, a gift to charity subject to a condition precedent which may be void for remoteness. Gray on Perpetuities (4th Ed.), § 605; Restatement of Property, § 370; Conwell's Adm. v. Heavick's Adm., 5 Harr. 296.
The effect of Paragraph III C is, therefore, to make a vested gift to a charity but to provide for an accumulation of income over a period which might possibly extend *314 beyond the permissive period of the rule against perpetuities. When such is the case, the period of accumulation for the charity is not measured by the test of the rule against perpetuities but by the test of reasonableness. IV Scott on Trusts, § 401.9; Restatement of Trusts 2nd, § 401; Restatement of Property, § 442; Girard Trust Company v. Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church, 30 Del.Ch. 1, 52 A.2d 591. This being so, Paragraph III C standing alone is a valid gift of income for a period of accumulation which by stipulation, might well extend beyond the permissive period of the rule against perpetuities.
The majority, I believe, would agree with the foregoing but find, by reason of a general intent of the testator expressed in Paragraph II of the Will, that he could not have intended this to take place. In my opinion, however, this may not be, for its effect is to construe the clear provisions of Paragraph III C in a fashion not intended by the testator. Its effect is to rewrite his Will. Under the circumstances, this may be a desirable result but I conceive that it is not the function of a court.
Paragraph III C is quite clear in its provisions and needs no construction to determine its meaning. The testamentary trustees are directed to accumulate income until $2,000,000.00 has been accumulated "as artificial principal", at which time the trustees are directed to pay over "the said sum of Two Million Dollars" to the charity. In the light of this express reference to a definite sum, how can it be said that the testator had a general intent that, under some circumstances, the sum would be less? It is, of course obvious that he did not foresee the possibility that the accumulation might not be completed within the limits of the so-called duration clause, but recognition of that lapse on his part demonstrates that to change the amount of the gift by construction is to supply for the testator a testamentary disposition he could not have intended because he did not think of the possibility.
If anything further is needed to demonstrate that the testator intended to benefit the charity in the precise amount of $2,000,000.00, it is found in the later provision of Paragraph III C making the subsequent gifts of income and principal to his family. These gifts are made expressly "after the accumulation of the said Two Million Dollars as artificial principal."
In my mind, the meaning of Paragraph III C is clear. Once the gift to the charity is found to be vested, it follows that the accumulation must continue until the full sum of $2,000,000.00 has been achieved. To hold otherwise is to rewrite the Will under the guise of construction. In my opinion, the Vice Chancellor's ruling on the point should be affirmed.