[No. 5306–7–III.   Division Three.   May 30, 1984.]

*In the Matter of* LEON C. BOOKER.

SISTERS OF CHARITY OF THE HOUSE OF PROVIDENCE, *Appellant,* v. COLUMBIA COUNTY HOSPITAL DISTRICT, ET AL, *Respondents.*

*Tom Scribner, Robert Zagelow,* and *Minnick, Hayner & Zagelow,* for appellant.

*H. N. Woolson, Terry R. Nealey, Woolson & Nealey, John M. Reese, Larry B. Siegel,* and *Reese, Baffney, Schrag & Siegel, P.S.,* for respondents.

GREEN, J.—This appeal presents one issue: Did the court err in permitting a deviation from the specific terms of a trust? We answer in the negative.

On May 14, 1969, Leon C. Booker executed a trust naming Columbia County Hospital District as principal beneficiary and Sisters of Charity of the House of Providence in the State of Washington for the benefit of St. Mary Community Hospital in Walla Walla as alternate beneficiary. Rainier National Bank was the designated trustee. At the time this trust was created, the assets were valued at about $700,000.

Mr. Booker died in September 1970. The trust assets were invested by the bank and the returns allowed to accumulate. In 1981 the Internal Revenue Service notified the trustee bank that the exempt status of the trust might be in jeopardy if the funds were not distributed in the near future. At that time the value of the trust estate exceeded $1 million.

On September 17, 1981, Columbia County Hospital District filed a petition to secure an interpretation of the following provisions of the trust:

> The charitable residuary purpose of this Trust shall be to construct, fully equip and furnish a forty (40) bed Rest Home in the City of Dayton, Columbia County, Washington to be called the BOOKER REST HOME ANNEX, here-

inafter called 'Rest Home'. The Rest Home shall consist of twenty (20) single patient rooms and ten (10) double patient rooms with each of the single patient and each of the double patient rooms to include a private bathroom with bathtub. The Rest Home shall also include such accessory rooms and areas including paved parking facilities as are normally provided in first class rest homes. The Rest Home shall be constructed so that it is adjoining or attached to the Columbia County General Hospital and so that its administration and control will be as convenient as may be, to the main offices of the Columbia County General Hospital for efficient operation of the whole complex consisting of the COLUMBIA COUNTY GENERAL HOSPITAL, the BOOKER CONVALESCENT ANNEX and the BOOKER REST HOME ANNEX.

The Rest Home shall be the same architecturally designed type of high quality construction as that used on the BOOKER CONVALESCENT ANNEX and be constructed to meet hospital specifications so that the Rest Home may be used as a hospital if deemed necessary or desirable by the Columbia County Hospital District Commissioners.

. . .

Upon the Trustee being certain the net Trust Estate has grown sufficiently to accomplish the Trust charitable residuary purpose, the Trustee shall authorize the Columbia County Hospital District to accept the acceptable firm bids and enter into written contracts for the Rest Home building construction, equipment and furnishings. Thereafter the Trustee shall reduce to cash and pay the then net Trust Estate to the Treasurer of Columbia County, Washington, ex–officio treasurer of Columbia County Hospital District, to be disbursed by the said Treasurer to construct, equip and furnish the Rest Home. Any excess of funds in the Trust Estate over the final cost of completion of the nursing home shall be distributed to said County Treasurer and shall be paid by the Treasurer to Columbia County Hospital District and used by said District for additional Rest Home equipment, furnishings and supplies.

. . . [T]he Trustor recognizes certain advance payments to architects and engineers will be required in connection with preparation of plans and specifications prior to calling for bids and to ascertain sufficiency of

funds in the Trust Estate. Therefore, when the Trustee has reasonable belief that the net Trust Estate is sufficient to construct, equip and furnish the Rest Home, the Trustee, with no liability to itself, may authorize Columbia County Hospital District to employ a competent hospital architectural firm and the Trustee to pay the reasonable architectural and engineering fees thereby incurred.

The trust also provides:

To determine if sufficient funds are available, the Columbia County Hospital District, Dayton, Washington shall furnish the Trustee with firm bids by a responsible building contractor for the building and responsible equipment suppliers for the necessary nursing home equipment and furnishings.

. . .

At the time the Trustee is reasonably certain the net Trust Estate is sufficient to accomplish the Trust charitable residuary purpose and so advises the Columbia County Hospital District and should it then become known to the Trustee that Columbia County Hospital District does not desire the Rest Home, refuses to agree to construct, equip and furnish the Rest Home in the manner directed herein or at any time should the Trustee absolutely determine it is impossible to accomplish the Trust charitable residuary purpose, Trustor directs the Alternate Beneficiary shall become the beneficiary of this Trust. Provided, however, the said hospital district shall have one year from the date of written notification by the Trustee of the availability of funds to accept the charitable residuary purpose of this Trust and agree to the Trust charitable residuary purpose. Upon the rejection by said hospital district or the failure of said hospital district to accept the charitable residuary purpose within the said one year, the Trustor directs the Alternate Beneficiary shall thereupon become the beneficiary of this Trust.

St. Mary Community Hospital also petitioned on behalf of the alternate beneficiary, the Sisters of Charity, for the benefits conferred upon them under the trust in the event Columbia County Hospital District found it not feasible to proceed with the rest home. If the Sisters of Charity

became the beneficiary of the trust, they would be entitled to receive the income.

Following a hearing on November 23, 1981, the court entered an intermediate order which provided: (1) a deviation from the explicit terms of the trust to allow a reduction of not more than 10 units nor less than 30 beds in the rest home be authorized due to changed circumstances; (2) the rest home annex design could differ from the design of the Booker Convalescent Center Annex so long as the rest home was constructed of the same architectural design high quality construction; (3) the design anticipate the remote possibility of use as a hospital; (4) the trustee advance architectural and engineering fees for drafting preliminary plans, specifications and cost estimates; and (5) upon completion of those plans, another hearing be set for final approval.

A subsequent hearing on May 28 and June 4, 1982, resulted in an order permitting the construction of a rest home of 30 or 32 beds instead of 40 beds as provided in the trust; the home be built of structural steel so that it could be converted into a hospital if needed; and each room be furnished and equipped so occupants could move in with just personal effects and clothing. The court also directed the architects to prepare the necessary plans and submit them to contractors for bids. These plans and bids were to be submitted to the court for final approval. If the bids exceeded available trust funds, the trustee was directed to determine if the trust funds are adequate and, if not, pass the funds over to the use of the Sisters of Charity. From this order, the Sisters of Charity (St. Mary Community Hospital) appeal.

It is the position of the Sisters of Charity that the court erred in allowing a deviation from the trust and failing to award the income to them as alternate beneficiary. This position is premised upon the following contentions: (1) The trust has a specific, not general, charitable intent with a gift over if the trust purpose is impossible to accomplish; accumulation of funds sufficient to accomplish this purpose

is a condition precedent to vesting the trust in Columbia County Hospital District; and since sufficient funds have not been accumulated nor will be accumulated within the rule against perpetuities, the trust purpose cannot be accomplished and the income should be awarded to the alternate beneficiary. (2) The doctrines of equitable deviation or approximation are not applicable to vary the specific terms of the trust. We disagree.

■■ Several well settled rules govern the disposition of the first contention. Initially, the law favors early vesting of estates. *In re Estate of Lemon,* 47 Wn.2d 23, 26, 286 P.2d 691 (1955); *In re Estate of Quick,* 33 Wn.2d 568, 573, 206 P.2d 489 (1949). The court in *In re Estate of Galland,* 103 Wash. 106, 120, 173 P. 740 (1918) (quoting *Ingraham v. Ingraham,* 169 Ill. 432, 48 N.E. 561, 49 N.E. 320 (1897)), stated:

> [A] court will be 'keen-sighted' to discover an intention to make an unconditional and immediate gift to a charity. 'The tendency of the courts being to construe limitations as vested . . .

Secondly, a court will find a condition to be precedent only when the language of the document manifests such a clear intent on the part of the trustor. *In re Estate of Quick, supra* at 574. The period needed for accumulation of funds in a charitable trust will not be deemed a condition precedent to the gift unless the language used requires such a construction. *In re Estate of Galland, supra* at 120. Thirdly, a charitable gift does not fail even though the terms of the trust provide the income may accumulate for a period longer than that of the rule against perpetuities. Restatement (Second) of Trusts § 401, comment *k,* at 650 (app. 1959); G. Bogert, *Trusts and Trustees* § 352, at 692–95 (2d rev. ed. 1977); 4 A. Scott, *Trusts* § 401.9, at 3167 (3d ed. 1967); Annot., *Validity, Construction, and Effect of Provisions of Charitable Trust Providing for Accumulation of Income,* 6 A.L.R.4th 903, §§ 4, 16 (1981). Further, an overwhelming majority of cases hold that a provision for accumulation is not a condition precedent to vesting and

the validity of an accumulation provision is tested by the reasonableness of the period of time during which the income is to be accumulated rather than by the rule against perpetuities. *See* cases cited in 4 A. Scott, *Trusts* § 401.9 (3d ed. 1967); G. Bogert, *Trusts and Trustees* § 352 (2d rev. ed. 1977); and Annot., 6 A.L.R.4th 903 (1981). *See specifically Mastin v. First Nat'l Bank,* 278 Ala. 251, 177 So. 2d 808 (1965); *In re Estate of McKenzie,* 227 Cal. App. 2d 167, 38 Cal. Rptr. 496, 500, 7 A.L.R.3d 1275 (1964); *Colonial Trust Co. v. Waldron,* 112 Conn. 216, 152 A. 69, 71 (1930); *Girard Trust Co. v. Rector, Wardens & Vestrymen,* 30 Del. Ch. 1, 52 A.2d 591, 597 (1947); *Mercantile Trust Co. Nat'l Ass'n v. Shriners' Hosp.,* 551 S.W.2d 864 (Mo. Ct. App. 1977); *Wendell v. Hazel Wood Cemetery,* 7 N.J. Super. 117, 72 A.2d 383 (1950).

Considering the Booker trust in light of these rules, we find the trust fund vested immediately in the trustee upon the death of Mr. Booker for the charitable residuary purpose of constructing a rest home. Absent language that accumulation of sufficient funds is a condition precedent to vesting, we find the accumulation provision merely postponed the time of enjoyment. Only when the trustee *absolutely* determines it is impossible to accomplish the charitable purpose of the trust's principal beneficiary or such beneficiary does *not* desire or refuses to build a rest home does a condition subsequent occur allowing the income to be paid the alternate beneficiary.

■ Finally, contrary to the contention of the Sisters of Charity, we find the court's deviation from the specific terms of the trust was permissible. The court in *Reagh v. Hamilton,* 194 Wash. 449, 456, 78 P.2d 555 (1938) considered and allowed a deviation from a trust, stating:

> While courts, in construing the provisions of a charitable trust, ordinarily will not deviate from the plan outlined by the testator, they undoubtedly have the power to do so, if it is reasonably necessary in effectuating the primary purpose of the trust.

*See also Samuel & Jessie Kenney Presbyterian Home v.*

*State,* 174 Wash. 19, 57–58, 24 P.2d 403 (1933). This is consistent with Restatement (Second) of Trusts § 381, comment *d* (1957), which provides the court will permit the trustee to deviate and, if necessary to carry out the purposes of the trust, may direct the trustee to do acts which are not authorized or forbidden by the trust. Usually the court will direct deviation from the terms of the trust where compliance is impossible or where, owing to circumstances unknown to the trustor and not anticipated by him, compliance would defeat or substantially impair accomplishment of the purpose of the trust. Restatement (Second) of Trusts § 381 (1957); 4 A. Scott, *Trusts* § 381 (3d ed. 1967); G. Bogert, *Trusts and Trustees* § 394, at 250–51 (2d rev. ed. 1977).

Here the trial court found from the trust instrument and surrounding circumstances that Mr. Booker's general intent was to establish a rest home annex to Columbia County General Hospital. We agree. He had already constructed a convalescent annex. The rest home completed an overall plan. At the time the trust was written, Mr. Booker apparently believed there would be enough money in the trust to build a 40–bed rest home. As indicated by the evidence, inflation increased the cost of construction to such extent that a 40–bed unit could not be constructed. The trial court concluded, and properly so, that Mr. Booker's general intent and underlying purpose to construct a rest home would not be impaired by reducing the size of the home by not more than 10 beds. In other words, the provision for 40 beds was a detail in carrying out the general purpose of the trust rather than evidence of an intent that 40 beds be a specific condition of the trust. Noncompliance with detail provisions of a trust does not give rise to a transfer to the alternate beneficiary as such provisions are not of controlling importance to the trustor's scheme. *Trustees of Dartmouth College v. Quincy,* 357 Mass. 521, 258 N.E.2d 745, 753 (1970). Since the deviation was necessary to carry out the underlying purpose of the trust, there was no error. Having reached this conclusion, we need not consider the

other contentions of the Sisters of Charity.

The requested award of reasonable attorney's fees on appeal to Columbia Hospital District is remanded to the trial court for determination. Affirmed and remanded.

MUNSON, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court September 7, 1984.