**In the Matter of the Last WILL and Testament of James F. GREENWOOD.**

Supreme Court of Delaware.

July 13, 1970.

Joseph M. Kwiatkowski, Wilmington, for appellant-petitioners, Aubrey J. Cox and Tillman B. Cox.

Norman Aerenson, of Aerenson & Balick, Wilmington, for appellant-petitioner, Ethel Greenwood Harrington.

William D. Bailey, Jr., of Bayard, Brill & Handelman, Wilmington, as and for Guardian Ad Litem for the living and unborn great-grandchildren of Testator.

WOLCOTT, C. J., CAREY, J., and McNEILLY, Judge, sitting.

McNEILLY, Judge.

This is an appeal from the Court of Chancery and involves the construction of Item Second of the Last Will and Testament of James F. Greenwood which reads as follows:

"SECOND: All the rest, residue and remainder of my estate, real, personal or mixed, of which I may own at the time of my death, I give and bequeath to my daughter, Ethel Greenwood Harrington, after her demise the residue to be divided equally among my five (5) grandchildren, namely James G. Harrington, Raymond M. Harrington, Lawrence E. Harrington, Harold R. Harrington, Elizabeth James Elliott and great granddaughter, Janice A. Elliott, and any other great grandchildren."

The decedent, James F. Greenwood, died on November 15, 1951 survived by his only child, Mrs. Harrington, the five grandchildren named in the Will, and two great-grandchildren, Janice Elliott Trate and Ellen Louise Harrington. Since his death and prior to the action in Chancery eight other great-grandchildren had been born.

At the time of his death Mr. Greenwood owned a parcel of real estate known as 2008 Newport Gap Pike. This real estate was included within the residue of his estate, and subsequent to his death, Mrs. Harrington acquired by deed the interests devised to the five grandchildren and to one of the great-grandchildren, Janice Trate. On November 8, 1967, Mrs. Harrington and her husband entered into an Agreement of Sale with Aubrey J. Cox and Tillman B. Cox for the sale and purchase of this Newport Gap Pike property. Recognizing that in view of the provisions of the Will regarding Mr. Greenwood's great-grandchildren there was an uncertainty as to whether Mrs. Harrington had a fee simple title, an action was brought for the purpose of having the Court of Chancery declare whether or not Mrs. Harrington had a right in law to convey the fee simple title to the property to Mr. and Mrs. Cox. The petitioners in this action, the Harringtons and Cox's, contend that the will violates the rule against perpetuities because the phrase "any other great-grandchildren" shows an intention to include in the devise all great-grandchildren including those who might be born after the death of the life tenant. The rule against perpetuities is defined in Taylor v. Crosson, 11 Del.Ch. 145, 98 A. 375 (1916) as follows:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

The petitioners-appellants contend that because grandchildren and great-grandchildren constitute a common class and there is a possibility some of them will be born after the period allowed by the rule, the residuary clause must fall, an intestacy exists as to the residue, and Mrs. Harrington, as the sole heir-at-law, thus is the owner of the real estate in question in fee simple.

On the other hand, the guardian ad litem appointed by the Court below contends that because of the language, " * * * after her demise the residue to be divided equally * * * " the testator intended the class to include only those great-grandchildren living at his death, the time of distribution, and thus was not violative of the rule against perpetuities. The Court of Chancery agreed with this argument and on December 1, 1969 held that the gift was to a class which may be enlarged by the birth of great-grandchildren and which will close upon the death of Mrs. Harrington and, that, as a result, it did not violate the rule against perpetuities.

In reading Mr. Greenwood's will more than one construction is possible. It might be said that he intended the class to include all great-grandchildren whenever born, which would be in violation of the rule against perpetuities, or it might be said

that he intended to include only those great-grandchildren living at his death which would not be violative.

■ The law favors the early vesting of Estates, and where two constructions of an instrument are available, one of which violates the rule against perpetuities and the other which does not, the Courts will adopt the construction of the will which does not violate the rule. This proposition has been supported by this Court in Asche v. Asche, 210 A.2d 306 (Sup.Ct.1965) in which it was stated:

"In approaching the problem, we have in mind certain basic principles applicable to all will construction cases. We must try to determine the Testator's intent from the language of the will as a whole. If the intent so found creates a gift which violates the rule against perpetuities, the gift must fail. The Court will, however, prefer that construction which does not offend the rule, if such a construction is reasonably justified by the language used. The Court will also prefer construction that the gift is vested rather than contingent."

The Restatement of Property, § 386 indicates that the fact a class may grow or decrease does not itself constitute a violation of the rule against perpetuities. The Section provides:

"The fact that a limitation is in favor of a class causes no invalidity under the rule against perpetuities, when, under the language and circumstances of such limitation, the abilities of the class to increase and to decrease in membership are both certain to end within the maximum period described in § 375."

The Testator directed under Item Second that after the demise of Ethel Greenwood Harrington, the residue was to be divided equally among the members of the stated class of grandchildren and great-grandchildren. The term "after" imports the idea of immediacy. As was stated in the case of In re Swinburne, 16 R.I. 208, 14 A. 850, 852 (Sup.Ct.1888):

"It seems to us that 'after their death' obviously means immediately after their death, not an indefinite length of time afterwards; the words being introduced to fix definitely the time at which the bequest over is to take effect."

■ Although the language of the Will is simple and really requires no reference to the rules of construction, the following passage from Simes and Smith, Future Interests, § 634, illustrates the usual method of determining maximum class membership:

"First, in the absence of words in the will or circumstances indicating a contract intent, a testator would normally desire to include all persons possible within the class, whenever they are born and whenever they die.

Second, as a matter of convenience, it is desirable to close the class as soon as distribution is possible.

Third, these principles are modified to some extent by certain fixed rules of law such as the rule in force in a few jurisdictions making contingent remainders destructible and the rule that a limitation must be construed as a contingent remainder and not an executory interest if that is possible.

Fourth, aside from the effect of these fixed rules in the law of real property, there is a strong tendency in the American cases to treat dispositions of realty and personalty in the same way.

Out of the first, second and fourth of these principles may be formulated what might be called a general rule of construction: the maximum membership in the class is determined when the time for distribution has arrived. The class may

increase until that time and persons born thereafter are excluded. * * * "

With respect to the specific question here involved, § 640 of Simes and Smith treats a gift to a class preceded by a life estate:

"Where a gift to a class is postponed, so far as distribution is concerned, until the termination of a prior life estate, it is clear that the general rule of construction would permit the class to increase until the end of the life estate, but would exclude all members of the class who were not in being at the termination of the life estate. Such, in fact, is the common result, with reference to gifts of both personalty and realty. Such an application gives effect to the probable desire of the transferor to include as many members as possible and to the principle of convenience in closing the class when the time has come for distribution."

See also 4 Page on Wills § 35.12, wherein it is said:

"If the class is one other than heirs or next of kin, and possession is postponed because of an intervening particular estate, the time for ascertaining the class, to employ the usual formula, depends, in part, on whether the future gift to such class is vested or not. If it is vested, the class is so far ascertained as of testator's death, that if members of the class die thereafter, their interest will pass to their heirs or personal representatives, unless prevented by principles of joint tenancy. On the other hand, those who are born after the death of testator, but before the gift takes effect in possession, may also take. The future interest opens up to let them in, in the absence of provisions of the will which show a contrary intent. * * * "

It is our opinion that the Will created a vested interest in the class which closed upon the death of the life tenant. Accordingly, the judgment below is affirmed.